Martin CHERLIN, Plaintiff,

v.

Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Defendant.

Court No. 82–6–00923.

United States Court of International Trade.

April 3, 1984.

Martin Cherlin, pro se.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Sheila N. Ziff, Washington, D.C., on the brief), for defendant.

*On the Court's Motion for Review of Administrative Determination Upon Agency Record*

RE, Chief Judge:

Plaintiff challenges the Secretary of Labor's determination which denies certification of eligibility for trade adjustment assistance benefits to plaintiff and two other former employees of a manufacturer of ladies' sportswear, Young Timers, Inc., New York, New York. The Secretary de-

termined that the plaintiff's petition failed to satisfy the third eligibility requirement of section 222 of the Trade Act of 1974, 19 U.S.C. § 2272 (1976). Specifically, the Secretary found that imports of articles like or directly competitive with those produced by Young Timers did not contribute importantly to Young Timers' decline in sales or production, and thus, to the separation from employment of plaintiff and his fellow employees.

Plaintiff contests the Secretary's determination. First, he claims that Young Timers lost business over the period 1978 to 1980 because its customers increased their purchases of imported ladies' sportswear with a concomitant decrease in purchases from Young Timers. This increase in the purchase of imported goods, plaintiff asserts, contributed importantly to the absolute decline in sales by Young Timers and the employees' eventual separation from employment. Secondly, plaintiff complains that the Secretary's determination is not supported by the administrative record in that the investigative report of the Office of Trade Adjustment Assistance (OTAA) is based upon the results of an incorrect customer survey. In essence, plaintiff challenges the nature and extent of the Secretary's investigation.

After reviewing the administrative record, all pleadings and contentions, the court holds that the Secretary's denial of certification is supported by substantial evidence and is in accordance with law. Hence, the determination of the Secretary is affirmed.

On April 17, 1981, plaintiff and two other employees of Young Timers (petitioners) filed a petition with OTAA for certification of eligibility to apply for trade adjustment assistance benefits. Pursuant to section 221(a) of the Trade Act of 1974, 19 U.S.C. § 2271(a) (1976), OTAA published a notice of the filing of a petition and the initiation of an investigation. 46 Fed.Reg. 24,760 (1981).

OTAA's investigation disclosed that all of the employees of Young Timers were engaged in employment related to the pro-

duction of ladies' sportswear, consisting of blouses, skirts, pants and jackets. These employees performed various tasks, such as pattern making, sample making, designing, cutting, shipping and sales. The sewing and assembly work for Young Timers was performed by independent contractors. Young Timers sold its garments to major department store chains and small retail shops nationwide under two brand names, Something Special Sportswear and Nostalgia.

OTAA's investigation included an industry perspective on all items produced by Young Timers, namely, women's and misses' blouses, shirts, skirts, slacks, shorts, coats and jackets. This perspective disclosed that imports of these goods generally rose during the period of 1978 to 1980. Similarly, OTAA found that domestic production increased over the same period, with the exception of the slacks and shorts industry, which experienced a slight downturn.

OTAA also conducted a survey of the major customers of Young Timers, with sixty-two percent (62%) responding. These customers comprised less than a majority of Young Timers' sales in 1979, and accounted for a substantial percentage of Young Timers' lost sales in 1980. The survey disclosed that almost all of those who responded did not import ladies sportswear in 1978, 1979 or 1980. Of those that did, their purchases of imports decreased in 1979 as compared to 1978, and in 1980 as compared to 1979. Moreover, the administrative record reveals that the decision by one customer to switch from Young Timers to another manufacturer, foreign or domestic, resulted from practical business considerations relating to the design and quality of Young Timers' product, and its inability to satisfy the customer's orders with adequate and prompt shipments.

Based on these findings, OTAA concluded that plaintiff's claim, that increased imports of ladies' sportswear contributed importantly to the downturn in Young Timers' sales and production and resultant layoff of the firm's employees, was without

merit. Hence, the Secretary issued a negative determination on the petition. 47 Fed. Reg. 11,342 (1982).

Thereafter, petitioners sought administrative reconsideration of the Secretary's negative determination. They asserted that the results of the customer survey were not an accurate reflection of the state of the ladies' sportswear industry from 1978 to 1980. Petitioners also claimed that many of Young Timers' customers actually increased their purchases of imported ladies' sportswear. According to petitioners, these goods were less expensive and higher in quality than those produced by Young Timers. Moreover, they were purchased from Young Timers' American competitors, who had their products manufactured overseas. Therefore, petitioners maintained that the Secretary's determination was unsupported, and that they should not have been denied certification of eligibility for trade adjustment assistance benefits.

In dismissing petitioners' application for reconsideration, OTAA explained that an unsubstantiated assertion of a potential gain in business, were it not for the presence of imports of like or directly competitive goods, did not satisfy the criteria for certification of eligibility under section 222 of the Trade Act of 1974. In particular, OTAA reiterated that the petition failed to satisfy the "contributed importantly" test of section 222(3). OTAA noted that its customer survey showed that Young Timers' customers either did not import ladies' sportswear in 1978, 1979 and 1980, or decreased their purchases of imported ladies' sportswear in 1979 and 1980 compared to the immediate preceding respective years. Based on these findings, the Secretary found no new grounds for reconsideration.

On June 29, 1982, plaintiff commenced this action by filing a letter complaint seeking judicial review of the Secretary's final determination. Subsequently, the court, *sua sponte*, ordered the action submitted for review upon the administrative record pursuant to Rule 56.1.

Under section 222 of the Trade Act of 1974, 19 U.S.C. § 2272 (1976), the Secretary is to certify a group of workers as eligible to apply for adjustment assistance if he determines:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof *contributed importantly* to such total or partial separation, or threat thereof, and to such decline in sales or production. (Emphasis added.)

The Secretary denied petitioners' claim for certification for failure to satisfy the third eligibility criterion, *i.e.*, increased imports did not contribute importantly to the decline in sales or production at Young Timers, Inc., and to the separation from employment of the petitioners.

Section 284(b) of the Trade Act of 1974, 19 U.S.C. § 2395(b) (Supp. V 1981) empowers this court to review a decision by the Secretary which denies a petition for certification of eligibility for trade adjustment assistance benefits. Judicial review is available to assure that the determination by the Secretary is supported by substantial evidence contained in the administrative record, and is in accordance with law.

■ Two questions are presented in this action. First, whether OTAA's customer survey was conducted in a manner that provided an accurate picture of the effect of imports on Young Timers' business for the period 1978 to 1980. Second, whether, in finding that imports of ladies' sportswear did not contribute importantly to Young Timers' lost sales, and thus, to the separation from employment of its employees, the Secretary correctly interpreted and applied section 222(3) of the Trade Act of 1974.

Plaintiff maintains that the court must overturn the Secretary's negative certification determination because OTAA's underlying findings are based upon an incorrect customer survey. More specifically, plaintiff challenges the data derived from OTAA's chosen method of investigation. Plaintiff contends that the customer survey did not permit OTAA adequately to assess whether increased imports "contributed importantly" to sales lost by Young Timers to its domestic competitors, who sold imported ladies' sportswear. Plaintiff also complains that the second question in the survey did not address the issue whether Young Timers' customers increased their purchases from those domestic vendors, *i.e.,* Young Timers' competitors, who sold imported ladies' sportswear.

Question two asks:

To the best of your knowledge, were any of the product(s) purchased from domestic firms manufactured in a foreign country? Yes or No. If yes, indicate percentage for 1979 .....%, 1980 .....%, 1981 .....%.

Plaintiff asserts that this question lacks the specificity necessary to allow OTAA to make its assessment of the impact of imports, and, as a result, the answers would neither be accurate nor reflect the true situation in the industry during the period 1978 to 1980.

OTAA, as the Secretary's designate pursuant to Section 248 of the Trade Act of 1974, 19 U.S.C. § 2320 (1976), is empowered to conduct an investigation into plaintiff's petition. Trade Act of 1974, § 221(a), 19 U.S.C. § 2271(a) (1976). While OTAA has a duty to investigate, the nature and extent of the investigation are matters resting properly within the sound discretion of the administrating officials. *Woodrum v. Donovan,* 544 F.Supp. 202, 206 (Ct.Int'l Trade 1982).

■ Prior case law has approved the use of the customer survey method. *United Glass and Ceramic Workers of North America, AFL–CIO v. Marshall,* 584 F.2d 398 (D.C.Cir.1978); *Local 167, International Molders and Allied Workers' Union, AFL–CIO v. Marshall,* 643 F.2d 26 (1st Cir.1981). While these courts have characterized the survey method as "not a very sophisticated test," they have held that the technique was a reasonable means of ascertaining the existence of a causal nexus between increased imports and a firm's lost sales, and thus the resultant layoff of its employees. *Local 167,* at 30 (quoting *United Glass & Ceramic Workers,* at 405). It has been expressly noted that:

administrative officials must have the necessary flexibility to discharge their official responsibilities under the worker adjustment assistance program. While the court may identify flaws in the methodology used by the Secretary, it is not the court's function to substitute its own method of analysis for that of the Secretary. Rather, the court will substantially defer to the Secretary's "chosen technique, only remanding a case if that technique is so marred that the Secretary's finding is arbitrary or of such nature that it could not be based on 'substantial evidence.' "

*United Glass & Ceramic Workers,* at 405.

Under the circumstances presented, OTAA's chosen methodology is not "so marred" as to require the court to hold that the Secretary's determination "is arbitrary or of such nature that it could not be based on 'substantial evidence.' " *Id.* It is clear that the customer survey, and, in particular, the second question, provided OTAA with a sufficiently accurate picture of the buying patterns of Young Timers' customers. Plaintiff has offered very little proof, other than mere allegations, to substantiate his position that the Secretary's methodology is flawed. In view of the lack of persuasive evidence that the Secretary's findings were arbitrary, or not based on substantial evidence, the court will defer to the administrator's chosen method of analysis.

■ The court also must consider the question of causation, *i.e.,* whether increased imports "contributed importantly"

to Young Timers' decline in sales or production and the eventual layoff of Young Timers' employees. Any examination of the causation standard must begin with the statute itself. Section 222 provides that "the term 'contributed importantly' means a cause which is important but not necessarily more important than any other cause." The statute offers little assistance in ascertaining the precise meaning to be accorded the word "important." Hence, the court may seek guidance from the accompanying legislative history.

The relevant history reveals that Congress intended that "a cause * * * be significantly more than *de minimis* to have contributed importantly." S.Rep. No. 93–1298, 93rd Cong., 2d Sess. 133, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7186, 7275. Yet, Congress strongly advised against the use of "any mechanical designation such as a percentage of causation." *Id.* By way of example, the Senate Report noted that if a factor, other than imports, was "so dominant" that any separation from employment and decline in sales or production would have occurred despite the presence of increased imports, the Secretary could not find that a petition satisfied the statutory causation requirement. *Id.* Indeed, it is evident that any separation resulting from "domestic competition, seasonal, cyclical or technological factors," regardless of the level of import penetration, is not sufficient to qualify a worker for certification of eligibility for trade adjustment assistance benefits. *Id.*

OTAA conducted an extensive and detailed investigation into each and every product line manufactured by Young Timers. The investigative report included relevant information as to competitive products, industry perspective, consumption and domestic production, exports and imports of all of the garments, and comparative ratios of imports to domestic production and imports to domestic consumption. OTAA also elicited data as to Young Timers' imports, plant employment, production, and sales for the period 1978 to 1980. Finally, OTAA conducted a survey of Young Timers' largest customers inquiring as to their purchases from Young Timers, and from other producers of ladies' sportswear, foreign or domestic.

In the product lines under investigation, the comparative ratios of imports to domestic production and consumption reveal a mixed picture in the relative degree of import penetration over the relevant period. For blouses and shirts, imports decreased relatively 5.0% and 0.6% respectively; for skirts, imports increased relatively 2.9% and 2.2%; for slacks and shorts, imports dropped relatively 3.2% and 0.5%; and for coats and jackets, they rose 15.0% and 6.1%. In addition, OTAA considered the results of its survey of Young Timers' customers. Of those responding, only one customer reported purchases of imported ladies' sportswear, and that customer decreased its purchases of imports in 1979 as compared to 1978 and 1980 as compared to 1979. When questioned about its switch to imports, this customer noted that it would have remained a customer of Young Timers had Young Timers resolved its problems with the design, quality, and delivery of its merchandise. The remaining respondents reported no purchases of imported ladies' sportswear for the relevant period.

In view of the administrative record, and the pertinent legislation and its history, the court holds that the Secretary did not err in finding that imports of ladies' sportswear did not contribute importantly to Young Timers' lost sales. Moreover, it is evident that factors other than increased import penetration contributed importantly to Young Timers' loss of business, and thus, to the separation from employment of the petitioners.

Accordingly, it is the determination of the court that the Secretary of Labor's denial of certification is supported by substantial evidence, and is in accordance with the trade adjustment assistance provisions of the Trade Act of 1974. The determination of the Secretary is therefore affirmed, and plaintiff's action is dismissed.