**ESTATE OF William FINKEL, Plaintiff,**

v.

**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Defendant.**

Court No. 82–11–01541.

United States Court of International Trade.

July 31, 1985.

Barnes, Richardson & Colburn, New York City (Jack D. Mlaswki, New York City, of counsel) (Andrew P. Vance, New York City, on brief), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Sheila N. Ziff, Washington, D.C., on brief), for defendant.

*Memorandum Opinion and Order*

RE, Chief Judge:

In this action, the plaintiff-decedent's estate (plaintiff), on behalf of the former employees of Trifine Trouser Co., Inc. (Trifine) challenges a determination of the Secretary of Labor which denied its former employees certification of eligibility for benefits under the trade adjustment assistance program of the Trade Act of 1974, 19

U.S.C. §§ 2101–2487 (1982). The Secretary determined that plaintiff's petition failed to satisfy the third eligibility requirement of section 222 of the Trade Act of 1974, 19 U.S.C. § 2272 (1982). Specifically, the Secretary found that imports of articles like or directly competitive with those produced by Trifine did not contribute importantly to Trifine's decline in sales or production, and thus, to the separation from employment of plaintiff and his fellow employees.

Section 222 requires that the Secretary shall certify a group of workers as eligible to apply for adjustment assistance benefits if it is determined:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272.

After reviewing the administrative record, and the arguments and briefs of the parties, this Court holds that the Secretary's denial of certification is supported by substantial evidence, and is in accordance with law.[1]

*Facts*

On March 23, 1981, plaintiff filed a petition with the Department of Labor's Office of Trade Adjustment Assistance (OTAA) on behalf of the former employees of Trifine Trouser Co., Inc., for certification of eligibility for trade adjustment assistance benefits. Pursuant to section 221(a) of the

---

**1.** To protect the interests of the parties, all confidential business data has been deleted from this official published decision. Confidential

data is included in the decision of the court made available to counsel for the parties.

Trade Act of 1974, 19 U.S.C. § 2271(a) (1982), OTAA published a notice of the filing of the petition and the initiation of an investigation. 46 Fed.Reg. 20,322 (1981). Plaintiff's petition contended that increased imports of men's and boys' trousers or slacks "contributed importantly" to the decline in sales and production at Trifine, and to the eventual separation from employment of the workers, thereby entitling them to certification.

OTAA's investigation disclosed that all of Trifine's employees were engaged in employment related to the production of men's and boys' dress and sports slacks. While Trifine's production mix changed from year to year, approximately [* * *] percent of Trifine's sales in 1979 were boy's slacks. The remaining [* * *] percent were men's slacks. The work performed consisted of sewing, pressing and labelling the garments. After completion, the slacks were shipped to retail stores throughout the United States.

OTAA's investigation included a nationwide industry study which analyzed the goods produced by Trifine. The study disclosed that imports of men's and boys' trousers declined 24.0 percent between 1978 and 1979 after increasing by 1.4 percent between 1977 and 1978. OTAA determined that imports for 1980 advanced 7.3 percent over 1979, and that the domestic production of men's and boy's trousers and shorts decreased 7.6 percent between 1978 and 1980.

OTAA also conducted a survey of the major customers of Trifine, about 60% of whom responded to the questionnaire. In attempting to determine whether these customers had shifted their purchases from Trifine to imports, the OTAA requested customers to provide information on 1) purchases from Trifine, 2) purchases from other domestic sources, and 3) purchases from foreign sources. The majority of Trifine's major customers who responded to the survey indicated that they did not import any men's or boys' slacks in 1979 and 1980.

Based on these findings, the Secretary concluded that the former employees of Trifine did not satisfy the group eligibility requirements of section 222, reasoning that the customer survey revealed that most of Trifine's customers did not import men's or boys' slacks in 1979 and 1980. Indeed, those customers who did import men's and boys' slacks in 1979 and 1980 represented a relatively small percentage of Trifine's sales in 1979 and 1980. Thus, the Secretary issued a negative determination on plaintiff's petition for certification. 47 Fed.Reg. 15,927 (1982).

Plaintiff sought reconsideration of the Secretary's negative determination. He contended that: (1) Trifine's sales had declined gradually since 1974 because of increased imports of men's and boys' slacks; (2) he was denied due process in that he was not informed he could request a public hearing; (3) there was an error in OTAA's memorandum of recommendation pertaining to the use of company labels; (4) Trifine had an excellent business and credit record; and (5) it was the company's policy not to resort to imports of slacks at the expense of unionized labor.

In dismissing plaintiff's application for reconsideration, the Secretary explained that: (1) the customer survey showed that the workers did not meet the "contributed importantly" test; (2) the Department of Labor could not, under section 221, consider Trifine's decline in sales prior to 1980 because the certification coverage (and the pertinent data to be considered) is limited to workers whose separation occurred no earlier than one year prior to the date of plaintiff's petition (March 23, 1981); (3) while the published notice of investigation extended an invitation for a public hearing, a hearing is not a condition precedent for the Secretary to make a determination; (4) the remaining points raised by plaintiff as to the company's business and credit record, its policy not to import slacks, and OTAA's alleged error pertaining to the use of company labels, are not relevant to a determination of certification.

On November 15, 1982, plaintiff commenced this action by filing a letter complaint seeking judicial review of the Secre-

tary's final determination. Subsequently, based on the administrative record, plaintiff filed a motion for review of the Secretary's determination.

Upon submission of this action for determination pursuant to Rule 56.1, the court found that, since the Secretary had failed to submit relevant documents and information prepared for and considered in reaching his initial negative determination, the administrative record was incomplete. Upon remand, and, in compliance with the court's order, the Secretary submitted the additional information, and set forth the reasons for reaffirming his original decision.

Plaintiff contends that, in concluding that imports did not contribute importantly to the separations at Trifine, the Secretary misinterpreted the phrase "contributed importantly," and made findings not supported by substantial evidence. Furthermore, plaintiff contends that the Secretary's own findings establish that increased imports "contributed importantly" to the separations at Trifine.

Specifically, plaintiff attacks the investigative method and factual findings utilized in the Secretary's evaluation. First, he objects to the alleged emphasis placed upon Trifine's customers who increased, rather than decreased, purchases of its products. Plaintiff argues that the customer survey inadequately represented: (1) those customers who decreased purchases from Trifine and switched to imports; and (2) those customers who switched to other domestic sources, in lieu of imports, because those domestic manufacturers lowered their prices to meet the competition from imports. Second, plaintiff contends that the customer survey was incapable of showing Trifine's difficulty in obtaining new customers due to the increasing share of the market captured by imports.

Plaintiff also asserts that the Secretary's failure initially to submit the entire administrative record is inexcusable, and constitutes bad faith. Consequently, plaintiff requests that legal fees, costs and expenses of this action be assessed against the de-

fendant. Finally, he alleges that he was improperly denied an opportunity to present his views at a hearing.

Two questions are presented in this action. First, whether OTAA's customer survey was conducted in a manner that provided an accurate picture of the effect of imports on Trifine's business for the years 1979 and 1980. Second, whether in finding that imports of men's and boys' slacks did not contribute importantly to a decline in Trifine's sales, and thus, to the separation from employment of its employees, the Secretary correctly interpreted and applied section 222(3) of the Trade Act of 1974.

The court holds that plaintiff has not shown that the OTAA's customer survey was flawed, or that imports contributed importantly to Trifine's loss of sales or the worker's separation from employment.

### Due Process

Section 221 authorizes the Secretary to provide for a public hearing and afford interested parties an opportunity to be present and comment on a petition for certification. Under 29 C.F.R. 90.13(a), an interested party must request a hearing within ten days after the date of the Secretary's publication in the Federal Register of the notice of receipt of the petition.

Plaintiff does not dispute that the Secretary fulfilled the obligations required under the statute and pertinent regulations. He argues, however, that the Secretary also should have provided him with actual notice so that he would have been aware of the prescribed time limitation to request a hearing. In support of his position, plaintiff cites *Tyler v. Donovan*, 3 C.I.T. 62, 535 F.Supp. 691 (1982), as demonstrating a liberal interpretation and application of the statute and regulations pertaining to *pro se* plaintiffs in trade adjustment assistance cases.

In *Tyler*, the question presented was whether procedural irregularities at the administrative level prejudiced the rights of plaintiffs. The alleged errors in *Tyler* included the Secretary's failure to publish a

notice in the Federal Register that he had received plaintiffs' petition and initiated an investigation, and his failure to publish a notice and summary of his final determination. In this case, there is no dispute that the Secretary has compiled with the relevant procedural requirements. The question presented here is whether, in the absence of an affirmative requirement to do so, the Secretary also should have given plaintiff *actual notice* of the receipt of the petition when published in the Federal Register, thereby affording him an opportunity to present his views at a hearing. Hence, *Tyler* is clearly distinguishable from the instant case.

■ It is well settled that "the essence of due process is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him *and opportunity to meet it.*" *Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976) (quoting Frankfurter, J., concurring in *Joint Anti-Facists Committee v. McGrath,* 341 U.S. 123, 171–72, 71 S.Ct. 624, 648–49, 95 L.Ed. 817 (1951)) (emphasis added). It is also true that "because of the *ex parte* nature of the certification process, and the remedial purpose of the trade adjustment assistance program, the Secretary is obliged to conduct his investigation with the utmost regard for the petitioning workers." *Local 167, International Molders and Allied Workers' Union v. Marshall,* 643 F.2d 26, 31 (1st Cir. 1981).

■ The court is not persuaded by the Secretary's contention that, since "on at least three occasions, albeit on an informal basis, the petitioner had an opportunity to submit his views," due process requirements were met. It is the opinion of the court that a more precise and demanding standard is necessary to meet the requirements of due process, particularly since plaintiff was proceeding *pro se* before the Secretary. Accordingly, the court expresses the view that the Secretary should provide actual notice to all petitioners when the petition is received, and that the notice of investigation should be timely published

in the Federal Register. As noted in *Tyler,* "the cost and administrative burden of conveying the additional information is minimal when compared with the benefits reaped by the parties and the court in devoting their efforts to the merits of the case rather than to procedural issues." *Tyler, supra,* 3 C.I.T. at 66, 535 F.Supp. at 694.

■ Nevertheless, under the present circumstances, the court has concluded that this action is properly before it for determination, and that the Secretary has followed the procedural requirements of the statute and pertinent regulations. Case law teaches that the court will not set aside agency action unless the procedural errors complained of were prejudicial to the aggrieved party. *John V. Carr & Son, Inc. v. United States,* 69 Cust.Ct. 78, C.D. 4377, 347 F.Supp. 1390 (1972), *aff'd,* 61 CCPA 52, C.A.D. 1118, 496 F.2d 1225 (1974). Thus, in this case, the court holds that there are no procedural errors that have prejudiced plaintiff's right to a fair consideration of his petition at the administrative level, or his right to meaningful judicial review.

### Secretary's Methodology

Plaintiff maintains that the court must overturn the Secretary's negative determination because OTAA's chosen method of investigation precluded an accurate analysis of the effect of increased imports upon Trifine's decline in sales. Specifically, plaintiff alleges that OTAA's underlying findings are based upon a biased customer survey which represented only those customers who increased, rather than decreased, purchases from Trifine during the 1979–1980 period. He urges that the survey inadequately represented those customers who had decreased purchases from Trifine and also switched to imports, or to other domestic sources who had lowered prices to compete with imports. Finally, plaintiff contends that the survey was incapable of revealing Trifine's inability to obtain new customers because of the increasing share of the market captured by imports.

The purpose of the customer survey was to determine how much of Trifine's decline in sales was *directly attributable* to its customers switching to imports during the 1979–1980 period. To determine this, OTAA identified those customers who indicated that they had imported boys' and men's slacks, and compared the amount expended toward these purchases with the total amount of Trifine's sales decline for those years. OTAA then determined what percentage of Trifine's total sales decline in 1980 was attributable to imports.

OTAA determined that the amount of sales represented by the responding customers was [\* \* \*] in 1979 and [\* \* \*] in 1980. The amount of sales to respondents which shifted from Trifine to imports between 1979 and 1980 was [\* \* \*]. The percentage that amount represented of Trifine's sales to respondents was [\* \* \*] percent in 1979, and [\* \* \*] percent in 1980. Finally, OTAA compared the sales lost to imports [\* \* \*] to Trifine's total sales decline [\* \* \*] for the 1979–1980 period. It then concluded that [\* \* \*] percent of Trifine's total sales decline in 1980 was attributable to imports.

Contrary to plaintiff's contention, the survey did not represent only those customers who increased rather than decreased purchases from Trifine. Rather, consistent with its purpose, the survey focused upon how much of Trifine's total sales decline was *directly attributable* to imports. Plaintiff urges that a more appropriate analysis would have been to compare proportionally the amount of import purchases with all of Trifine's sales in 1980. He submits that, as sales to the respondent customers constituted [\* \* \*] percent of all Trifine's sales in that year, only [\* \* \*] purchases was reflected in the survey. Therefore, plaintiff claims, since [\* \* \*] was attributable to switches to imports, it follows that [\* \* \*] times that amount or [\* \* \*] percent of the total sales decline, should be attributable to imports.

■ OTAA is the agency within the Department of Labor charged with responsibility for investigating petitions for certification of group eligibility for worker adjustment assistance. 29 C.F.R. § 90.12 (1982). While OTAA has a duty to investigate, the nature and extent of the investigation are matters resting properly within the sound discretion of the administrating officials. *Woodrum v. Donovan*, 4 C.I.T. 46, 51, 544 F.Supp. 202, 206 (1982), *aff'd*, 737 F.2d 1575 (Fed.Cir.1984).

The use of the customer survey method has been approved by the courts in several prior judicial determinations. *Cherlin v. Donovan*, 6 C.I.T. ——, 585 F.Supp. 644 (1984); *United Glass and Ceramic Workers of North America v. Marshall*, 584 F.2d 398 (D.C.Cir.1978); *Local 167, International Molders and Allied Workers' Union v. Marshall*, 643 F.2d 26 (1st Cir. 1981). While the courts have characterized the survey method as "not a very sophisticated test," they have, nevertheless, held that the technique was a reasonable means of ascertaining the existence of a causal nexus between increased imports and a firm's lost sales, and thus the resultant separation of its employees. *Local 167, supra*, 643 F.2d at 30 (quoting *United Glass & Ceramic Workers, supra*, 584 F.2d at 405).

> This Court has expressly noted that: administrative officials must have the necessary flexibility to discharge their official responsibilities under the worker adjustment assistance program. While the court may identify flaws in the methodology used by the Secretary, it is not the court's function to substitute its own method of analysis for that of the Secretary. Rather, the court will substantially defer to the Secretary's "chosen technique, only remanding a case if that technique is so marred that the Secretary's finding is arbitrary or of such nature that it could not be based on 'substantial evidence.' "

*Cherlin*, 6 C.I.T. at ——, 585 F.Supp. at 647 (quoting *United Glass & Ceramic Workers, supra*, 584 F.2d at 405.)

The major customers who responded to the survey accounted for a substantial part of Trifine's 1980 sales. In the aggregate

they increased their purchases from Trifine by [* * *] during the 1979–1980 period. Very few customers imported men's and boys' slacks during this period. Most major customers either increased purchases from Trifine or decreased import purchases. Only [* * *] indicated that it had increased imports in 1980 while decreasing purchases from Trifine. Finally, the customers who did purchase imports represented only [* * *] percent of Trifine's total sales in 1979, and [* * *] percent of its sales in 1980.

■ In reviewing the appropriate data, and the applicable case law, the court has concluded that the Secretary's technique is not so marred that his finding was arbitrary, or that it was not based upon substantial evidence. Indeed, the data upon which the Secretary relied weighs strongly against plaintiff's contention. Even assuming, *arguendo,* that the survey was not complete, plaintiff has failed to demonstrate that imports "contributed importantly" to Trifine's loss of sales or to the worker's separation from employment. Since, on this record, plaintiff has not presented any relevant evidence to support his position that OTAA's method was flawed, the court upholds the Secretary's chosen technique.

### Causation

Plaintiff contends that the Secretary erred in interpreting the causation standard of section 222(3). In order to meet the required standard, increased imports must have "contributed importantly" to the decline in sales and production of plaintiff's firm, and to the eventual separation of its employees. In order to ascertain this, OTAA considered the actual sales lost by Trifine as a direct result of its major customers switching to imports. Plaintiff argues that OTAA should also have taken into account: (1) those customers who decreased purchases from Trifine and switched to imports, or to other domestic sources who had lowered their prices to compete with imports, and (2) Trifine's inability to attract new customers due to increasing import penetration.

The Secretary has consistently interpreted section 222(3) to authorize trade adjustment assistance for workers only if they can establish an important causal nexus between increased imports and their separation from employment. *Abbott v. Donovan,* 6 C.I.T. ——, 570 F.Supp. 41, 49 (1983). Important causal nexus essentially refers to the term "contributed importantly," and suggests a direct and substantial relationship between increased imports and a decline in sales and production. *See Abbott v. Donovan,* 8 C.I.T. ——, 596 F.Supp. 472, 475 (1984). Plaintiff's contention that the Secretary misapplied the causation standard in not considering the indirect effects of increased imports ignores the intent of the statute. On this point, the observations of the *Cherlin* court are most instructive. The court, in pertinent part, stated:

Any examination of the causation standard must begin with the statute itself. Section 222 provides that "the term 'contributed importantly' means a cause which is important but not necessarily more important than any other cause." The statute offers little assistance in ascertaining the precise meaning to be accorded the word "important." Hence, the court may seek guidance from the accompanying legislative history.

The relevant history reveals that Congress intended that "a cause * * * be significantly more than *de minimus* to have contributed importantly." S.Rep. No. 93–1298, 93rd Cong., 2d Sess. 133, reprinted in 1974 U.S.Code Cong. & Admin.News 7186, 7275. Yet, Congress strongly advised against the use of "any mechanical designation such as a percentage of causation." *Id.* By way of example, the Senate Report noted that if a factor, other than imports, was "so dominant" that any separation from employment and decline in sales or production would have occurred despite the presence of increased imports, the Secretary could not find that a petition satisfied the statutory causation requirement.

*Id.* Indeed, it is evident that any separation resulting from "domestic competition, seasonal, cyclical or technological factors," regardless of the level of import penetration, is not sufficient to qualify a worker for certification of eligibility for trade adjustment assistance benefits. *Id.*

6 C.I.T. at ——, 585 F.Supp. at 648.

■ Plaintiff erroneously suggests that, had the Secretary taken into account factors other than direct loss of sales due to customers' switching to imports, the result would have been an affirmative determination for certification. The legislative history of section 222(3), however, clearly indicates that any separation resulting from a factor other than import penetration, such as domestic competition, does not warrant certification. Therefore, plaintiff's contention that the Secretary erred in interpreting the causation standard of section 222(3) cannot be sustained.

■ The sole question remaining is whether a shift by Trifine's customers to imports "contributed importantly" to the decline in sales at Trifine and eventual separation of its employees. A careful review of the administrative record reveals that, upon considering the results of the customer survey, only [* * *] percent of Trifine's total sales decline was attributable to Trifine's customers' switching to imports. In view of congressional intent that "a cause ... be significantly more than *de minimus* to have contributed importantly," this Court holds that the Secretary did not err in finding that imports of men's and boys' slacks did not contribute importantly to Trifine's loss of business and eventual separation of its employees. Since the court finds that the Secretary did not commit error, it need not address the issue of bad faith asserted by plaintiff in the Secretary's initial failure to submit the entire administrative record, nor plaintiff's request for legal fees and costs.

Accordingly, it is the determination of the Court that the Secretary of Labor's denial of certification is supported by substantial evidence, and is in accordance with the trade adjustment assistance provisions of the Trade Act of 1974. The determination of the Secretary is therefore affirmed, and plaintiff's action is dismissed.