FORMER EMPLOYEES OF LINDEN APPAREL CORP., PLAINTIFFS *v.* UNITED STATES, DEFENDANT

Court No. 87-04-00625

(Decided March 19, 1990)

*Bobby A. McGee* for plaintiffs.

*Stuart M. Gerson,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Velta A. Melnbrencis*) for defendant.

## OPINION

TSOUCALAS, *Judge:* This matter is before the Court following remand. Plaintiffs continue to challenge a decision of the Secretary of Labor denying them certification to apply for trade adjustment assistance benefits under the Trade Act of 1974, Pub. L. 93–618, title II (codified as amended at 19 U.S.C. §§ 2271–2321, 2395 (1988)). Section 222 of the Act requires the Secretary to certify workers if he determines

> (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
> (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and
> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272(a) (1988).

## BACKGROUND

Linden Apparel ceased production of men's and boys' overalls in 1985, and of painter pants in May 1986, at which time 75 percent of its

workers were separated from their positions. During the ensuing six months, the remaining workers were separated intermittently until the plant's closure in November 1986.

On November 21, 1986, plaintiffs filed a petition for certification to apply for trade adjustment assistance benefits with the Department of Labor claiming that their separations were caused by competition from imports from Haiti and elsewhere. The Secretary of Labor, in denying the petition, determined that Linden Apparel was an exclusive contractor for its parent company, Washington Manufacturing, and treated Washington Manufacturing as Linden Apparel's sole customer for purposes of the investigation. Since Washington Manufacturing did not use foreign contractors or import men's and boys' overalls and painter pants in 1985 and 1986, the period in question, the Secretary reasoned that criterion (3) of Section 222 was not satisfied in that "increases of imports of articles like or directly competitive with articles produced by" Linden Apparel did not contribute importantly to the workers' separations. 19 U.S.C. § 2272(a)(3).

Plaintiffs sought judicial review of the negative determination in this Court pursuant to 19 U.S.C. § 2395(a) (1988). In remanding the case to the Secretary, the Court held that the Secretary erred in treating Washington Manufacturing as Linden Apparel's sole customer, and ordered the Secretary to survey unrelated purchasers of the articles under investigation. *Former Employees of Linden Apparel Corp.* v. *United States,* 13 CIT 467, Slip Op. 89–79 (June 6, 1989). Only then could the Secretary accurately determine whether purchasers of men's and boys' overalls and painter pants were switching from those made by Linden Apparel to imports, and whether any such increase in imports "contributed importantly" to the workers' separations.[1]

Further, the Court ordered the Secretary to provide a "description of the organizational structure" of Washington Industries, the parent company of Washington Manufacturing, and of how Linden Apparel fit into the organization. *Id.* at 7. In particular, the Court noted the need to determine whether Washington Industries' corporate ties with Haywood Male, Inc. ("Haywood") have a bearing on the certification issue.

## DISCUSSION

The Court of International Trade may review the Secretary's denial of certification to assure that the determination is "supported by substantial evidence contained in the administrative record and is in accordance with law." *Nagy* v. *Donovan,* 6 CIT 141, 143, 571 F. Supp. 1261, 1263 (1983) (citing 19 U.S.C. § 2395(b)); *Woodrum* v. *Donovan,* 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), *aff'd,* 737 F.2d 1575 (Fed. Cir.

---

[1] The Court stated that it would be circular reasoning for the Secretary to treat the parent company as its subsidiary's sole customer since that would not be helpful in determining whether purchasers of goods made by the subsidiary switched to imports, and whether increases of such imports contributed importantly to the workers' separations.

1984). When the court remands a case, the Secretary must make "new or modified findings of fact" which also must be supported by substantial evidence. 19 U.S.C. § 2395(b) (1988).

In accordance with the Court's order, the Secretary conducted surveys of unrelated purchasers of Linden Apparel's painter pants. The use of such surveys has been sanctioned by the courts as a means of determining whether a "causal nexus" exists between increased imports and lost sales resulting in separations. *Estate of Finkel* v. *Donovan,* 9 CIT 374, 381, 614 F. Supp. 1245, 1250 (1985). The Secretary conducted a number of customer surveys and each purchaser indicated it had not imported painter pants during the applicable period. *Notice of Negative Determination on Reconsideration* in *Supplemental Administrative Record (Public)* at 54. Some of the purchasers indicated that painter pants were a "fad" which ended by 1986, after which they simply did not reorder the product. *Id.*

Trade adjustment assistance was not intended to compensate workers who were separated for reasons other than increases in imports. The legislative history of the Trade Act of 1974 makes clear that separations which result from cyclical factors are not covered by the statute. S. Rep. No. 1298, 93d Cong., 2nd Sess. 133, *reprinted in* 1974 U.S. Code Cong. & Admin. News 7186, 7275. It is an economic reality that when the consumer demand for a product decreases, sales of that product decline and worker separations may result. While increases in imports may be a contributing factor to the decreased demand, the Trade Act was not meant to afford trade adjustment assistance "to all workers who lose their jobs due in some way to imports." *Western Conference of Teamsters* v. *Brock,* 13 CIT 169, 182, 709 F. Supp. 1159, 1170 (1989), quoting *Former Employees of Asarco's Amarillo Copper Refinery* v. *United States,* 11 CIT 815, 819, 675 F. Supp. 647, 650 (1987). The statute requires the increased imports to have "contributed importantly" to the separations and to a "decline in sales or production." 19 U.S.C. § 2272(a)(3). In order for imports to have contributed importantly to the worker separations, they must be "significantly more than [a] *de minimus*" cause. *Finkel,* 9 CIT at 382, 614 F. Supp. at 1251 (quoting *Cherlin* v. *Donovan,* 7 CIT 158, 163, 585 F. Supp. 644, 648 (1984)).

On remand, the Secretary determined from customer surveys that none of Washington Manufacturing's customers imported painter pants during the applicable period. *Notice of Negative Determination on Reconsideration* in *Supplemental Administrative Record (Public)* at 54. Since the decline in sales of painter pants apparently was due to the end of a "fad," the Secretary found that imports could not have contributed importantly to the separations. *Id.* The Court holds that this determination is supported by substantial evidence and in accordance with law.

The Court also ordered the Secretary to investigate the corporate structure of Washington Industries and how it might affect the certification issue. Plaintiffs claim that Washington Industries was purchased by Haywood in 1985 or 1986 and that Haywood had a plant in Haiti to

which Washington Industries transferred its operations, resulting in the separations. *Plaintiffs' Letter Complaint* in *Administrative Record (Public)* at 40–41.

The Secretary's investigation revealed that Haywood's parent company, BNHH Properties ("BNHH") purchased Washington Industries, parent of Washington Manufacturing and Linden Apparel, in October 1986, several months *after* the Linden plant ceased production of painter pants. *Notice of Negative Determination on Reconsideration* in *Supplemental Administrative Record (Public)* at 55. It also disclosed that Washington Industries and Haywood were merged in early 1987.[2] But, since Washington Industries did not have corporate ties with Haywood during the time Linden Apparel was going out of business, the Secretary concluded that Washington could not have transferred its operations there during the relevant period. Moreover, the Haitian plant did not make products "like or directly competitive with" painter pants; it produced men's jackets and western shirts. This rebuts plaintiffs' charge that the Haitian plant's production contributed to the separations. These facts sufficiently substantiate the Secretary's determination.

CONCLUSION

The Court is convinced that the Secretary's determination is supported by substantial evidence and is in conformity with the law. Accordingly, the negative determination of the Secretary of Labor is affirmed and plaintiffs' action is dismissed.

---

[2] The Secretary's investigation was based on communications with company officials as well as corporate and state documents relating to the acquisition of Washington by BNHH in October 1986 and the merger of Washington and Haywood in 1987. *Supplemental Administrative Record (Public)* at 25–36.