The Court has repeatedly upheld Commerce's determination of post-sale price adjustments as indirect selling expenses. *Koyo Seiko Co.,* 16 CIT at 542–43, 796 F. Supp. at 1530; *Koyo Seiko Co. v. United States,* 17 CIT 474, 476, 840 F. Supp. 136, 139 (1993).

In *Koyo Seiko Co.,* 16 CIT at 542–43, 769 F. Supp. at 1530, this Court deemed Commerce's treatment of plaintiffs' post-sale price adjustments as indirect selling expenses because these post-sale price adjustments could not be directly correlated with sales of the subject merchandise. In this case, NSK likewise cannot show its commissions to be directly related to *any* specific product and, therefore, Commerce's determination as to this issue is affirmed.

CONCLUSION

The discounts and commissions at issue in this case were not product-specific and NSK has been unable to show a direct relationship between the sales in question and the discounts or commissions it gave. Thus, Commerce's determination is affirmed in all respects and this case is hereby dismissed.

■■■■■■■■■■

■■■■■■■■

UNITED STEELWORKERS OF AMERICA, AFL-CIO.CLC AND UNITED STEEL-WORKERS OF AMERICA, LOCAL UNION NO. 5089, PLAINTIFFS *v.* U.S. SECRETARY OF LABOR, DEFENDANT

Court No. 91–12–00855

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

(Decided November 9, 1993)

*United Steelworkers of America (Rudolph L. Milasich, Jr.)* for plaintiffs.
*Frank W. Hunger,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Marc E. Montalbine),* United States Department of Labor *(Annaliese Impink),* of counsel, for defendant.

## Memorandum Opinion

DiCarlo, *Chief Judge:* Plaintiffs, United Steelworkers of America, AFL-CIO.CLC and United Steelworkers of America, Local Union No. 5089, brought this action for judgment upon the agency record pursuant to Rule 56.1 of the Rules of this Court. Plaintiffs challenge the Department of Labor's denial of certification for trade adjustment assistance to employees of Sunshine Mining Company, Kellogg, Idaho. The court has jurisdiction pursuant to 19 U.S.C. § 2395 (1988) and 28 U.S.C. § 1581(d)(1) (1988). The court affirms Labor's determination.

## Background

Sunshine Mining Company is a producer of silver, copper and antimony. Approximately 90% of its sales is silver and 10% is copper and antimony. Sales of silver declined in 1990 compared to 1989, and sales of silver, copper and antimony declined during the first quarter of 1991 compared to the first quarter of 1990. In June 1991, Sunshine laid off 269 workers from its silver and copper/antimony mine in Kellogg, Idaho, a subsidiary of Sunshine.

In May 1991, a petition was filed with Labor on behalf of Sunshine's workers for certification of eligibility to apply for trade adjustment assistance under 19 U.S.C. § 2271 *et. seq.* Labor initially denied the petition based on a customer survey, finding that increased imports did not "contribute importantly" to the separation of the workers from Sunshine, as required by 19 U.S.C. § 2272 (1988). *See Determinations Regarding Eligibility to Apply for Worker Adjustment Assistance,* 56 Fed. Reg. 36,065 (Dep't Labor 1991). Labor subsequently reconsidered its determination. After conducting another customer survey based on an additional list of customers submitted by Sunshine, Labor affirmed its determination. *See Sunshine Mining Co. Kellogg, ID,* 56 Fed. Reg. 54,589 (Dep't Labor 1991). By court order dated June 1, 1992, Labor's determination was remanded to allow plaintiffs to review business confidential information in the administrative record and submit written comments. Labor's remand determination again affirmed its original determination. *Sunshine Mining Company, Kellogg, ID,* 57 Fed. Reg. 48,399 (Dep't Labor 1992) (Remand Determination).

Plaintiffs challenge Labor's finding that imports did not contribute importantly to the separation of Sunshine's employees as unsupported by substantial evidence. Plaintiffs claim that Labor improperly included a non-full production year of the company in the period of investigation. Plaintiffs also claim that Labor's denial of certification to Sunshine's employees is discriminatory and arbitrary since Labor granted certification to the workers of the ASARCO Coeur Unit, an adjacent silver/copper mine. In connection with the discrimination claim, plaintiffs request an access to the confidential record of Labor's certification to the workers at the ASARCO Coeur Unit.

STANDARD OF REVIEW

"A negative determination by the Secretary of Labor denying certification of eligibility for trade adjustment assistance will be upheld if it is supported by substantial evidence on the record and is otherwise in accordance with law." *Former Employees of General Elec. Corp. v. U.S. Dep't of Labor,* 14 CIT 608, 611 (1990) (citations omitted). *See also* 19 U.S.C. § 2395(b) (1988). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

DISCUSSION

*1. Whether increased imports contributed importantly to the separation of workers:*

The Secretary of Labor shall certify a group of workers as eligible to apply for trade adjustment assistance if he determines:

> (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
> (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and
> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof *contributed importantly* to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272(a) (emphasis added). The term "contributed importantly" is defined as "a cause which is important but not necessarily more important than any other cause." 19 U.S.C. § 2272(b)(1). "Increased imports" is defined by regulation to mean "that imports have increased either absolutely or relative to domestic production compared to a representative base period." 29 C.F.R. § 90.2 (1992).

In determining whether increased imports contributed importantly to the separation of the workers, Labor often employs a "dual test" which looks to whether the subject company's customers reduced purchases from that company and at the same time increased purchases of competitive imports. While recognizing that this "is not a very sophisticated test," the court found the dual test "a reasonable means of ascertaining a causal link between imports and separations." *United Glass and Ceramic Workers v. Marshall,* 584 F.2d 398, 405–06 (D.C. Cir. 1978). The causal link that Labor must find "suggests a direct and substantial relationship between increased imports and a decline in sales and production." *Estate of Finkel v. Donovan,* 9 CIT 374, 382, 614 F. Supp. 1245, 1251 (1985) (citation omitted).

In this case, Labor conducted customer surveys for the period of 1989, 1990 and the first quarter of 1991. The respondents to the survey include Sunshine, Kellogg's parent company to which the Kellogg mine sent its total production, the single customer that purchased copper and antimony from Sunshine, and three customers that accounted for 60% of Sunshine's silver sales during the investigation period. *Remand Determination,* 57 Fed. Reg. 48,399.

The survey showed that Sunshine itself did not import silver during the investigation period. R. 12. Sunshine's sole customer for copper and antimony increased its purchases from Sunshine and decreased its imports in 1990 compared to 1989, and decreased its purchases both from Sunshine and from imports in the first quarter of 1991 compared to the first quarter of 1990. R. 13. Of the three customers who purchased silver from Sunshine during the period of investigation, one did not have any imports of silver. R. 29. Another reported a constant level of imports and a decrease in purchases from Sunshine. R. 28. And the third increased its purchases from Sunshine and decreased its imports in 1990 compared to 1989, and increased its purchases both from Sunshine and from imports during the first quarter of 1991. R. 31. Based on these survey results, Labor concluded that none of the customers "increased their purchases of imports while decreasing their purchases from Sunshine." *Remand Determination,* 57 Fed. Reg. 48,399.

Plaintiffs contend that although no customer showed, in absolute terms, both increased imports and decreased purchases from Sunshine, customers increased their reliance on imports relative to their purchases from Sunshine during the first quarter of 1991 compared to the first quarter of 1990. Plaintiffs argue that there was a relative increase of imports by Sunshine's sole customer for copper and antimony, since the decrease in that customer's purchases from Sunshine exceeded, in percentage, the decrease in its imports during the first quarter of 1991.

The relative increase of imports, however, does not in itself establish a causal link with the separation of workers. In order to meet the "contributed importantly" test, Labor must find "a direct and substantial relationship" between the relative increase of imports and the decline in Sunshine's sales and production. *Estate of Finkel v. Donovan,* 9 CIT at 382, 614 F. Supp. at 1251. The record shows that during the first quarter of 1991, Sunshine's sole customer for copper and antimony reduced its purchases from Sunshine as well as from imports and all other domestic sources.[1] R. 13. Compared to the first quarter of 1990, the customer's total purchases of copper and antimony decreased by more than 50 percent. *Id.* In absolute terms, the decrease in its purchases from imports was far greater (about six times more) than the decrease in its purchases from Sunshine. *Id.* Given the evidence that the customer substantially

---

[1] The record indicates that in the first quarter of 1990, the customer purchased [       ] units of copper/antimony from Sunshine, [       ] units from all other domestic sources, and [       ] units from imports; in the first quarter of 1991, it purchased [       ] units from Sunshine, [       ] units from other domestic sources, and [       ] units from imports. R. 13.

reduced its demand from all sources, it was reasonable for Labor to conclude that the decline in Sunshine's sales and production was not the result of the customer's shift to imports.

Similarly, the record evidence supports Labor's finding that imports had no direct and substantial relationship with the decline in Sunshine's sales of silver. The record shows that the customer who decreased its purchases from Sunshine while maintaining a constant level of imports commented that it "would buy all the silver it could from Sunshine but shifted to other domestic sources because of Sunshine's falling production." R. 28. The only other customer who had imports of silver during the period of investigation increased its purchases from Sunshine. R. 31.

Plaintiffs claim that although this customer increased its purchases from Sunshine, there was a relative increase of imports during the first quarter of 1991 because its imports increased substantially while its purchases from Sunshine increased only slightly. There was, however, no showing of a decline in Sunshine's sales to this customer since the customer increased, rather than decreased, its purchases from Sunshine. *See* 19 U.S.C. § 2272(a)(2) (a group of workers shall be certified as eligible for trade adjustment assistance only if sales or production of the subject company "have decreased absolutely"). Given the statute's focus on the loss of established customers and on the failure to maintain past sales levels, the Secretary of Labor is "well within his discretion in excluding as evidence of the impact of imports those customers who are increasing purchases of imports while maintaining their purchases from [the subject company]." *United Glass,* 584 F.2d at 406.

Plaintiffs further claim that in granting certification to the workers at the neighboring ASARCO mine, Labor found that "U.S. imports of copper * * * and of silver increased absolutely and relative to U.S. shipments in 1990 compared to 1989." Pls.' Br. Ex. 2 (Certification Regarding Eligibility to Apply for Worker Adjustment Assistance, ASARCO—Coeur Unit, Wallace, Idaho, TA–W–25,523, May 3, 1991). According to plaintiffs, this finding was the sole basis of Labor's grant of certification to the ASARCO workers, and in denying certification to the workers at Sunshine, Labor improperly disregarded its own prior finding.

A reading of Labor's ASARCO determination reveals that Labor not only found U.S. imports of copper and silver increased in 1990, but also found specifically that "the ASARCO refinery to which the subject facility sends its production of silver and copper concentrates increased its imports of concentrates in 1990 compared to 1989." *Id.* This specific finding shows that increased imports had "a direct and substantial relationship" with the decline of sales and production at the ASARCO

mine.[2] Without establishing this causal link, the increase in the U.S. imports alone would not be sufficient to qualify a group of workers for trade adjustment assistance under the statute. *See* 19 U.S.C. § 2272(a)(3).

In contrast with the ASARCO case, Labor did not find that imports had a direct and substantial relationship with the decline of sales or production in this case. In reaching this conclusion, Labor surveyed 100% of Sunshine's customers for copper and antimony and 60% of its customers for silver. In addition, Labor considered certain government findings on silver production. R. 33 (Department of the Interior: Mineral Commodity Summaries, 1991). These findings indicate that domestic production of silver remained essentially unchanged in 1990 despite a drop in the average price, and that several factors may have contributed to the lower silver price, including a lack of industrial demand, investor fears that the U.S. economy was entering a recession which would limit future increases in industrial demand, the U.S. treasury's disposal of its excess silver holdings, and the use of substitutes for silver in various products. R. 34. The court finds that Labor conducted a reasonable investigation of various factors that may have contributed to the decline of Sunshine's sales and production, and Labor's determination that increased imports did not contribute importantly to the separation of the workers from Sunshine is supported by substantial evidence on the record.

## 2. The Period of Investigation:

As noted above, Labor's customer survey covers the period of 1989, 1990 and the first quarter of 1991. Plaintiffs claim that it was improper for Labor to include the year 1989 in the period of investigation because the Kellogg mine did not reach full production until 1990.

In order to determine whether there was an increase of imports, Labor is directed to use "a representative base period" for comparison, which is defined as "one year consisting of the four quarters immediately preceding the date which is twelve months prior to the date of the petition." 29 C.F.R. § 90.2 (1992). Because the petition in this case was filed on May 9, 1991, the proper base period under the regulation would be the four quarters prior to May 9, 1990. In their supplemental briefings submitted upon request of the court, the parties agree that pursuant to 29 C.F.R. § 90.2 the proper base period in this case should include the last three quarters of 1989 and the first quarter of 1990. The question therefore is whether Labor may consider the data from the first quarter of 1989 in determining whether an increase of imports has occurred.

---

[2] Plaintiffs assert that the specific finding could not have been the proper basis for Labor's grant of certification to the workers of the ASARCO mine, because the ASARCO refinery is a related party to the ASARCO mine and the court has held that the proper subject of customer survey is the first unrelated purchasers. *See Former Employees of Linden Apparel Corp. v. United States,* 13 CIT 467, 469, 715 F. Supp. 378, 381 (1989). Defendant argues that the ASARCO case is distinguishable from *Linden.* The question of whether Labor conducted a proper investigation in the ASARCO case is not before the court. Nonetheless, it is obvious that if the ASARCO refinery increased imports, the production of the ASARCO mine would be directly affected since the mine sent all its production to the refinery.

Although Labor has considerable discretion in conducting its investigations, it is required to comply with its own regulations. By including five quarters in the base period, Labor deviates from the requirement of 29 C.F.R. § 90.2 that a representative base period shall consist of four quarters. The court notes, however, that the purpose of defining a base period under § 90.2 is to determine whether there is an increase of imports. As previously shown, the issue of whether imports increased in this case arises only with respect to the first quarter of 1991 compared to the first quarter of 1990. Consequently, the inclusion of the first quarter of 1989 in the base period had little effect on Labor's finding in this case. Since Labor's determination stands with or without the data from the first quarter of 1989, in the interest of avoiding unnecessary delays, the court will not remand the determination in order for Labor to explain its deviation from the regulation.

*3. Access to Confidential Record of the ASARCO Case:*

Plaintiffs allege that Labor's denial of certification to Sunshine's workers is arbitrary and discriminatory because Labor granted certification to the workers at the ASARCO mine who were similarly situated as the workers at Sunshine except that the latter are unionized. Crucial to this claim, plaintiffs assert, is an examination of the confidential record of the ASARCO case. According to plaintiffs, the confidential record of the ASARCO case may contain evidence that Labor acted in a discriminatory manner against unionized workers at Sunshine and, without access to the confidential record, they are being deprived of the opportunity to litigate this case adequately.

Plaintiffs are not parties to the ASARCO case. Labor's regulation requires that confidential business information "shall not be available to the public." 19 C.F.R. § 90.32(b) (1992). Such confidential information is also exempted from disclosure by government agencies under the statute. *See* 5 U.S.C. § 552(b) (1988). Plaintiffs have not provided any authority showing that a non-party may be granted access to the confidential information of an unrelated case. Without proper authorization, Labor may not release the confidential record of the ASARCO case to plaintiffs in this case.

It has been held that Labor's rulings made on the basis of the factual findings must "be in accordance with the statute and not be arbitrary or capricious, and for this purpose the law requires a showing of reasoned analysis." *Former Employees of CSX Oil and Gas Corp. v. United States,* 13 CIT 645, 648–49, 720 F. Supp. 1002, 1006 (1989) (citations omitted). In its remand determination, Labor explained the distinction between the ASARCO case and this case:

> The ASARCO Certification for workers in Wallace, Idaho * * * would not provide a basis for the certification of workers at Sunshine Mining. The ASARCO worker group met all the Group Eligibility Requirements of the Trade Act including the "contributed importantly" test. The findings show that the ASARCO refinery, to which the Wallace mine sent its production of silver and copper con-

centrates, increased its imports of silver concentrates in 1990 compared to 1989.

*Remand Determination,* 57 Fed. Reg. 48,399. In contrast, Labor found that the "contributed importantly" test was not met in this case and analyzed the survey results as the basis of its finding. *Id.* Because Labor has provided a reasoned analysis distinguishing its findings in the ASARCO case from those in this case, the court does not find Labor's determination is arbitrary or discriminatory.

## CONCLUSIONS

For reasons stated above, the court holds that Labor's determination denying certification of eligibility for trade adjustment assistance to Sunshine's employees is supported by substantial evidence on the record and is in accordance with law.