RETAIL CLERKS INTERNATIONAL UNION, LOCAL 149F, FOOTWEAR DIVISION, PLAINTIFF *v.* RAYMOND J. DONOVAN, U.S. SECRETARY OF LABOR, DEFENDANT

Court No. 81–11–01604

Before RE, *Chief Judge.*

MEMORANDUM OPINION AND ORDER

(Decided April 29, 1986)

*Ira H. Weinstock, P.C.,* for the plaintiff.

*Richard K. Willard,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch (*Sheila N. Ziff* ), for the defendant.

RE, *Chief Judge:* In this action, plaintiff, Retail Clerks International Union, Local 149F—Footwear Division, on behalf of the former employees of Prestige Shoe Company (Prestige), seeks review of a final determination by the Secretary of Labor which denied certification of eligibility under the worker adjustment assistance program of the Trade Act of 1974, tit, II, § 221–249, 284, 19 U.S.C. § 2271–2321, 2395 (1982 & Supp. I 1983). The Secretary determined that the plaintiff's petition failed to satisfy the third eligibility requirement of section 222 of the Trade Act of 1974. 19 U.S.C. § 2272(3) (1982). Specifically, the Secretary found that the workers were not eligible for assistance because an increase in imports did not contribute importantly to Prestige's decline in sales or production, and, thus, to the separation from employment of Prestige's workers.

Plaintiff contests the Secretary's determination. Plaintiff contends that the Secretary's reliance on a customer survey, and the failure to take any testimony from Prestige officials or attorneys, renders the Secretary's decision arbitrary and unsupported by substantial evidence. In essence, plaintiff challenges the nature and extent of the Secretary's investigation.

After reviewing the administrative record and all pleadings and contentions, the Court holds that the Secretary's denial of certification is supported by substantial evidence, and is in accordance with the law. Hence, the determination of the Secretary is affirmed.

## ADMINISTRATIVE PROCEEDINGS

On August 29, 1980, plaintiff filed a petition with the Office of Trade Adjustment Assistance (OTAA) for certification of eligibility to apply for trade adjustment assistance benefits pursuant to section 221(a) of the Trade Act of 1974, 19 U.S.C. § 2271(a) (1982). The OTAA published a notice of the filing of the petition, and initiated an investigation. 45 Fed. Reg. 62,580 (1980).

The OTAA's investigation disclosed that all of the employees of Prestige were engaged in employment related to the production of women's casual shoes. These employees performed various tasks,

such as designing, cutting, assembling, and packaging the shoes. Prestige produced some component parts, such as heels and soles, and purchased the remaining parts from independent suppliers. The shoes produced were primarily made of leather and vinyl uppers with rubber bottoms, and were assembled by a cementing process. The company was a wholly owned subsidiary of Frier Industries, Incorporated, but operated independently from other Frier Industries subsidiaries. It ended production of women's shoes on July 31, 1981.

The OTAA's investigation included a report on the women's nonrubber footwear industry. This report disclosed that imports of these goods fluctuated, with a net increase of 0.2 percent between 1976 and 1980. There was, however, a decline of 20.1 percent in imports of that type of footwear in 1980 compared to 1979. The OTAA investigation further revealed that domestic production decreased 2.4 percent between the years 1979 and 1980, due mainly to a reduced demand for women's nonrubber footwear.

On the basis of information supplied by the president of Prestige, the OTAA found that "virtually all" of Prestige's decline in sales between 1979 and 1980 was attributable to decreases in purchases by one major customer. A confidential survey disclosed that this customer had decreased its imports of women's footwear in 1980 compared to the previous year, while increasing its purchases of domestically produced shoes.

Based on these findings, the Secretary concluded that imports of women's footwear did not contribute importantly to the downturn in Prestige's sales, and the resulting separation of the firm's employees. Consequently, the Secretary denied plaintiff's petition for certification. 46 Fed. Reg. 42,542 (1981).

Plaintiff then sought administrative reconsideration of the Secretary's negative determination. Its claim was largely based on the fact that the Company had ceased its operations since the certification request was made, and that the Secretary had failed to inquire into the company's reasons for having ceased operations. The union asserted that Company officials had told workers in June 1981 that the Company had lost a substantial amount of business from a major customer as a result of imports. This was the same customer the OTAA had surveyed in its investigation.

In dismissing plaintiff's application for reconsideration, the OTAA explained that the request provided no new information which would furnish a basis for certifying the former employees of Prestige for assistance. The OTAA noted that the survey of Prestige's main customer revealed not only that this customer had decreased its imports but also that it had increased its domestic purchases of women's footwear. Based on these findings, the Secretary found no new grounds for reconsideration.

On November 25, 1981, plaintiff commenced this action by filing a letter complaint seeking judicial review of the Secretary's final de-

termination. This action is now before the Court on the plaintiff's motion for judgment on the administrative record.

DISCUSSION

Under section 222 of the Trade Act of 1974, 19 U.S.C. § 2272 (1976), the Secretary is to certify a group of workers as eligible to apply for adjustment assistance if it is determined:

> (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
> (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and
> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

Trade Act of 1974 § 222, 19 U.S.C. § 2272 (Supp. I 1983).

The Secretary has interpreted section 222(3) of the Trade Act of 1974 in a uniform and consistent manner. Under this interpretation, trade adjustment assistance is authorized for workers if it can be established that an important causal nexus exists between increased imports and the workers' separation from employment. *Abbott* v. *Donovan,* 6 CIT 92, 101, 570 F. Supp. 41, 49 (1983). The term "contributed importantly" refers to the causal nexus, and suggests a direct and substantial relationship between increased imports and the decline in sales and production. *See Estate of Finkel* v. *Donovan,* 9 CIT 374, 382, 614 F. Supp. 1245 1251 (1985); *Abbott* v. *Donovan,* 8 CIT 237, 240, 596 F. Supp. 472, 475 (1984).

The Secretary denied petitioner's claim for certification for failure to satisfy the third eligibility criterion. This determination was based on the finding that increased imports did not contribute importantly to the decline in sales or production at Prestige, or to the separation from employment of the workers.

Plaintiff maintains that the court must set aside the Secretary's denial of certification because the OTAA's findings were flawed and insufficient. More specifically, plaintiff challenges the OTAA's method of investigation. Plaintiff contends that the customer survey did not permit the OTAA adequately to evaluate the reasons for Prestige's decline in sales and eventual closing. Plaintiff also asserts that the OTAA's failure to take any testimony from Company officials and attorneys renders the Secretary's decision arbitrary and unsupported by substantial evidence.

Section 284(b) of the Trade Act of 1974, 19 U.S.C. § 2395(b) (1982) empowers this court to review a decision by the Secretary which denies a petition for certification of eligibility for trade adjustment assistance benefits. Judicial review is available to ensure that the de-

termination by the Secretary is supported by substantial evidence contained in the administrative record, and is in accordance with law.

The OTAA, as the Secretary's designate pursuant to section 248 of the Trade Act of 1974, 19 U.S.C. § 2320 (1982), is authorized to conduct an investigation of plaintiff's petition. Trade Act of 1974 § 221(a), 19 U.S.C. § 2271(a) (1982). While the OTAA has a duty to investigate, the nature and extent of the investigation are matters that properly rest within the sound discretion of the administrative officials. *Woodrum* v. *Donovan*, 4 CIT 46, 51, 544 F. Supp. 202, 206 (1982), *aff'd*, 737 F.2d 1575 (Fed. Cir. 1984).

The use of the customer survey as an investigative method has been approved by the courts in several cases. *Cherlin* v. *Donovan*, 7 CIT 158, 585 F. Supp. 644 (1984); *United Glass and Ceramic Workers of North America* v. *Marshall*, 584 F.2d 398 (D.C. Cir. 1978); *Local 167, International Molders and Allied Workers' Union* v. *Marshall*, 643 F.2d 26 (1st Cir. 1981). While the courts have characterized the survey method as "not a very sophisticated test," they have, nevertheless, held that the technique is a reasonable means of ascertaining the existence of a causal nexus between increased imports and a firm's lost sales, and the resulting separation of its employees. *Local 167, supra*, 643 F.2d at 30 (quoting *United Glass & Ceramic Workers, supra*, 584 F.2d at 405).

As this court explained in *Cherlin* v. *Donovan*:

> [A]dministrative officials must have the necessary flexibility to discharge their official responsibilities under the worker adjustment assistance program. While the court may identify flaws in the methodology used by the Secretary, it is not the court's function to substitute its own method of analysis for that of the Secretary. Rather, the court will substantially defer to the Secretary's "chosen technique, only remanding a case if that technique is so marred that the Secretary's finding is arbitrary or of such nature that it could not be based on 'substantial evidence.'"

*Cherlin*, 7 CIT at 162, 585 F. Supp. at 647 (quoting *United Glass & Ceramic Workers, supra*, 584 F. 2d at 405). In this case the plaintiff has not offered any sound justification for disregarding the OTAA's customer survey as a reasonable and proper means of assessing the impact of imports on Prestige.

As noted, the investigation revealed that one major customer accounted for nearly all of Prestige's decline in sales between 1979 and 1980. Thus, on these facts, it was not improper for OTAA to survey only this major customer. Although Prestige's sales to this customer dropped dramatically from 1979 to 1980, the customer's response to the survey clearly indicated that this customer decreased its import purchases between 1979 and 1980, while increasing its purchases of casual women's shoes from domestic sources. Thus, there is no question that there is substantial evidence on the record

to support the Secretary's finding that imports did not contribute importantly to the worker separations at Prestige.

The plaintiff's contention that the Secretary's failure to take testimony from company officials to explain the closing of the company's operations was improper is without merit. Although this court has the authority to remand a case to the Secretary to take new evidence, the court will exercise this power only when "good cause" is shown. See 19 U.S.C. § 2395(b) (1982).

Section 284(b) of the Trade Act of 1974 provides in pertinent part:

> (b) The findings of fact by the Secretary of Labor * * * if supported by substantial evidence, shall be conclusive; but the court, for good cause shown; may remand the case to such Secretary to take further evidence * * *.

19 U.S.C. § 2395(b) (1982). As this court explained in *Abbott* v. *Secretary of Labor,* 3 CIT 54 (1982), this statute, in conjunction with 28 U.S.C. § 2640(c) (1982), requires that this court review the Secretary's determination on the basis of the administrative record, and prohibits the introduction of new evidence in this court. 3 CIT at 55. As the *Abbott* court noted, the rule that judicial review of administrative action must be based on the administrative record, and that the reviewing court may not receive new evidence is a well-settled principle of administrative law. *Id.* (citing *Cincinnati, N.O. & Tex. Pac. Ry.* v. *ICC,* 162 U.S. 184 (1896); *United States* v. *Carlo Bianchi & Co.,* 373 U.S. 709 (1963)). Nevertheless, the statute expressly provides that, "for good cause shown," the action may be remanded to the Secretary for the purpose of receiving new evidence. 19 U.S.C. § 2395(b) (1982). The Secretary may then make new or modified findings on the basis of the new evidence. *Id.* Thus, in the *Abbott* case, in accordance with this provision, the court remanded the action to the Secretary to supplement the record with the proferred evidence. 3 CIT at 55.

In the present case, the court must determine whether the plaintiff has shown "good cause" for remanding the action to take further evidence. It is the determination of the Court the plaintiff has not demonstrated good cause for remand.

In July 1981, an OTAA official spoke directly with the President of Prestige, who provided information pertaining to the company's sales and market. This information indicated that the company's decline in sales was largely attributable to one customer's decreased purchases. The information received from this customer indicated that the Prestige sales were lost to *domestic* , not import, competition. There is no reason to believe that the customer supplied incorrect information to the OTAA. Nor is there reason to believe that Prestige officials would have better information about this customer's purchases than the customer itself. Thus, the OTAA had no obligation to seek out indirect information about sales losses from

Prestige officials, when it had received direct and reliable information from the customer itself.

## CONCLUSION

After a thorough review of the record, the contentions of the parties, and the applicable law, the Court has concluded that the Secretary's investigation was not so marred that his determination was arbitrary, or not in accordance with law. The record reveals that the customer survey provided the Secretary with a sufficiently accurate picture of the factors accounting for the significant majority of Prestige's lost sales. These sales, the record reveals, were lost to domestic, not import, competition.

Accordingly, it is the determination of the court that the Secretary of Labor's denial of certification is supported by substantial evidence, and is in accordance with the trade adjustment assistance provisions of the Trade Act of 1974. The final determination of the Secretary is, therefore, affirmed, and plaintiff's action is dismissed.