FORMER EMPLOYEES OF BAKER PERKINS, PLAINTIFFS *v.*
UNITED STATES, DEFENDANT

Court No. 89-02-00083

(Decided July 26, 1989)

*Ervin M. Laurenz, James Fortenberry* and *Melvin Reikowsky, pro se,* for plaintiffs.

*Stuart E. Schiffer,* Acting Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch (*Velta A. Melnbrencis*), Civil Division, United States Department of Justice, for defendant.

### OPINION

RESTANI, *Judge:* Plaintiffs, former employees of Baker Perkins, bring this action challenging a determination of the Secretary of Labor (Labor) that they are ineligible for trade adjustment benefits under section 223 of the Trade Act of 1974, 19 U.S.C. § 2273 (1982). The basis for eligibility for such assistance is found at 19 U.S.C. § 2272 (1982 & Supp. V 1987) which states in relevant part that:

> (a) The Secretary shall certify a group of workers * * * as eligible to apply for adjustment assistance under this part if he determines—
>
>> (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
>> (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and
>> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

All three statutory criteria must be met in order for workers to be certified as eligible for trade adjustment assistance. In this case, the Secretary of Labor determined that the third criterion for eligibility had not been met.

### BACKGROUND

On August 24, 1988, a petition for certification of eligibility for trade adjustment assistance benefits was filed on behalf of all factory workers of APV Chemical Machinery, Inc. (APV) (formerly Baker Perkins) located in Saginaw, Michigan. APV is a subsidiary of a British firm, APV, plc., which has its North American headquarters in Chicago, Illinois. APV's Saginaw plant produced a variety of chemical machinery for sale to customers in the aerospace, chemical and pharmaceutical industries.[1] APV and its related companies

[1] Labor's Petition Verification, Public Record Document Numbers (PR) 6-10, lists "vertical mixers, screw extruders, pods & pushers and centrifuges" as examples of the type of machinery produced at the Saginaw plant.

produce similar products at plants in Lake Mills, Wisconsin, New Jersey and at several locations abroad. The Saginaw plant ceased production and all production workers were laid off on December 31, 1987. Public Record Document Number (PR) 19. In the petition, plaintiffs allege that imports of a "variety of machinery" lead to a decline in production and sales of machinery produced at the firm and to their separations. PR 2. In subsequent correspondence with the Department of Labor, plaintiffs specifically refer to imports of "batch mixers," "extrusion mixers" and "continuous mixers" produced at APV related plants in Peterborough, England and Guittard, France as the cause of their separations. PR 51–55. Nowhere in the record have plaintiffs alleged that imports from firms other than those affiliated with APV were the cause of their separations.

In its determination, dated October 28, 1988, Labor concluded that plaintiffs had failed to satisfy the third eligibility criterion. Labor based this conclusion on a survey of APV's customers which indicated that increased imports did not contribute importantly to the worker separations at the firm. PR 44–45; 53 Fed. Reg. 46,509 (Nov. 17, 1988). Following this negative determination, plaintiffs requested an administrative reconsideration of their petition pursuant to 29 C.F.R. § 90.18(c) (1988). On November 12, 1988, Labor denied this request for reconsideration stating that no error or misinterpretation of the law or of the facts had been found which would justify reconsideration. In the denial, it was additionally noted that the Saginaw plant had not produced batch mixers or extruded equipment in either 1987 or 1988 and that when the Saginaw plant closed in December 1987, all production was transferred to another domestic plant. PR 98.

ARGUMENTS

Plantiffs argue that the primary reason for the plant closing was that machines which were developed and formerly manufactured at the Baker Perkins plant in Saginaw were now being manufactured in foreign countries. Plaintiffs' Brief at 1. Plaintiffs argue that the customer survey conducted by Labor, in which all respondents indicated that they had not imported chemical machinery in the period surveyed, "was as worthless as worthless could be" because those customers were unaware of the fact that machinery which they had purchased from Baker Perkins was labelled as being manufactured at the Saginaw plant even though the machinery had been manufactured abroad. PR 51; Plaintiffs' Brief at 2. Finally, plaintiffs allege that Labor's findings are defective because the department never took into consideration the age of those who would receive benefits.

In response, defendant maintains that Labor's customer survey "showed that the Saginaw firm's major customers, which accounted for over 100 percent of the firm's 1987 sales decline, did not report

purchases of chemical machinery in 1986, 1987, or in the first nine months of 1988." Defendant's Brief at 10. Defendant rejects plaintiff's assertion that the survey was flawed, stating that "the record supports Labor's conclusion that no part of the 1987 sales decline was due to imports (even if some of the machinery that the customers purchased from the Saginaw plant was imported machinery.)" *Id.* at 14. As further support for Labor's determination, defendant cites evidence in the record indicating that when the Saginaw plant closed in December 1987, production was transferred to another domestic plant. Defendant also notes that the Saginaw plant had not produced any machinery "like" the imported machinery during the period considered by Labor. Lastly, defendant argues that Labor properly did not consider the age of the terminated employees in determining their eligibility for trade adjustment benefits.[2]

## DISCUSSION

The question before the court is whether Labor properly decided that plaintiffs are ineligible for adjustment assistance. Under the statute, labor's determination shall be conclusive and will be affirmed by this court so long as that determination is supported by substantial evidence on the record as a whole. 19 U.S.C. § 2395(b) (1982). The statute, however, authorizes this court to remand a case to Labor for further investigation if "good cause [is] shown." *Id.* at § 2395(b). This court has previously found "good cause" to exist where Labor's methodology "is so marred that [its] finding is arbitrary or of such a nature that is could not be based on substantial evidence." *Former Employees of Linden Apparel Corp.* v. *United States,* 13 CIT 467, Slip Op. 89-79 at 5 (June 6, 1989) (citing *United Glass & Ceramic Workers of North America, AFL-CIO* v. *Marshall,*584 F.2d 398, 405 (D.C. Cir. 1978); *Cherlin* v. *Donovan,* 7 CIT 158, 162, 585 F. Supp. 644, 647 (1984)). Due to the inadequacy of Labor's investigation in this case, the court finds a remand for further investigation appropriate.

As indicated *supra,* Labor's negative determination was based upon a departmental survey which indicated that four major customers of the subject firm did not import chemical machinery during the period surveyed. Although a customer survey has been found to be "a reasonable means of ascertaining the existence of a causal nexus between increased imports and a firm's lost sales, and thus the resultant layoff of its employees," *Cherlin* v. *Donovan,* 7 CIT 158, 162, 585 F. Supp. 644, 647 (1984) (citing *Local 167, International Molders and Allied Workers' Union, AFL-CIO* v. *Marshall,* 643 F.2d (1st Cir. 1981), it alone, does not form an adequate basis for Labor's conclusions under the unique facts of this case. The telephone survey conducted by Labor asked respondents only if they had pur-

---

[2]The court agrees with defendant that Labor is only required to consider the statutory factors set forth at 19 U.S.C. § 2272 in determining eligibility. Labor did not, therefore, err in refusing to consider the age of the terminated employees in its analysis.

chased chemical machinery from the subject firm, other domestic sources or foreign sources during the period of investigation. Confidential Record Document Numbers (CR) 31, 32, 33 & 39. This survey, by its very nature, was incapable of detecting the situation complained of by plaintiffs, namely, that machinery sold by the subject firm and labelled with domestic nameplates was actually produced abroad. APV's customers undoubtedly assumed that machinery purchased at the Saginaw plant and labelled as made at the Saginaw plant was, in fact, domestically made machinery.

Having determined that the customer survey does not support Labor's findings, the court next addresses the additional factors noted by Labor in its November 12, 1988 denial of plaintiffs' application for reconsideration. In the denial, Labor states:

> Section 223(b)(1) of the Trade Act states that the Department cannot certify workers for adjustment assistance who were laid off more than one year prior to the date of the petition. The date of the subject petition is August 24, 1988. Other findings in the investigation show that there were no batch makers or extruded equipment produced at the Saginaw plant in 1987 or in 1988.

PR 99. The court finds this statement curious for two reasons. First, the date on which the factory stopped producing certain machinery is irrelevant to the question of the petition's timeliness. As Labor notes, the statute clearly states that the relevant date is the date employment ceased. It is not in dispute that the Saginaw plant closed and laid off all production workers on December 31, 1987. PR 19. Therefore, the August 24, 1988 petition was timely filed. While the date production of machinery like the imported machinery ceased might be relevant to the investigation for other reasons (note the argument in defendant's brief, at 11, that eligibility should be denied if the plant workers have not produced goods like the imported goods during the period investigated by Labor), Labor has not articulated such reasoning anywhere in the record.[3] Second, the court is perplexed by Labor's apparent concern with the plant's 1988 production, in light of the fact that the plant ceased production at the end of 1987. An explanation of Labor's reasoning in this regard would be helpful.

Finally, Labor states in its denial that:

> The Saginaw plant closed in December 1987 and all production was transferred to another domestic corporate plant. A domestic transfer of production would not form a basis for certification.

---

[3]The record does not, in fact, clearly establish that the Saginaw plant did not produce machinery like the imported machinery during the period investigated by Labor. While the record does contain evidence that production of certain types of machinery, i.e. batch mixers and extruded equipment, ceased or was transferred to Europe prior to this period, CR 82 & 93, it is unclear as to whether production of what may be other types of machinery, i.e. continuous mixers, continued at Saginaw, or was transferred abroad during the relevant period. Obviously, more specific information pertaining to the Saginaw plant's functions during the investigatory period is necessary.

PR 99. Labor's statement regarding a domestic transfer of production is correct if it is shown that worker separations were caused by such a transfer to the exclusion of the eligibility triggering cause. Such a showing has not been made here. Labor's basis for concluding that all production was transferred domestically consists solely of statements by an APV company official that the plant's production was transferred to Lake Mills, Wisconsin before the plant closed on December 31, 1987. The record does not reveal, however, what type of production was transferred, how much and what type of production remained, and whether the Saginaw plant would have remained operating in the absence of such a transfer. Although the questionnaire asked APV to "provide production and employment figures for the subject plant and the plant to which production has been transferred" if layoffs were caused by a transfer of production to a domestic firm, APV's response indicates only the number of employees affected by the transfer. CR 25. Without more specific information, it is not possible to conclude that this transfer was the cause of plaintiffs' separation rather than increasing imports from APV related foreign manufacturing facilities.

Accordingly, this matter is remanded to the Secretary of Labor for further investigation consistent with this opinion. The Secretary is directed to afford plaintiffs an opportunity to demonstrate what machinery, if any, was produced at the plant in the investigatory period.