FORMER EMPLOYEES OF HOMESTAKE MINING CO., PLAINTIFFS *v.* WILLIAM E. BROCK, SECRETARY OF LABOR, U.S. DEPARTMENT OF LABOR, DEFENDANT

Court No. 86–04–00520

(Decided March 28, 1988)

*Stephenson, Carpenter, Crout & Olmsted (Joseph E. Manges)* for plaintiffs.

*John R. Bolton,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, United States Department of Justice *(J. Kevin Horgan),* for defendant.

DICARLO, *Judge:* Plaintiffs, former employees of Homestake Mining Company (Homestake), challenge the determination of the Secretary of Labor (Secretary) that they are ineligible for trade adjustment assistance under section 223 of the Trade Act of 1974 (Act), 19 U.S.C. § 2273 (1982). After reviewing the administrative record and the arguments of the parties, the Court holds that the Secretary's denial of certification is supported by substantial evidence and is in accordance with law. The Secretary's determination is affirmed.

### BACKGROUND

Homestake employed plaintiffs at a uranium mine and mill in New Mexico. Most of the plaintiffs lost their jobs in October, 1984 or in April and May of 1985. R. 2, 93.

The Office of Trade Adjustment Assistance of the Employment and Training Administration of the United States Department of Labor (Labor) published notice in the *Federal Register* of plaintiffs' petition for trade adjustment assistance, stating that plaintiffs or others having a substantial interest in the subject matter of the investigation could request a public hearing within 10 days of the notice. *Investigations Regarding Certifications of Eligibility To Apply for Worker Adjustment Assistance; American Standard, Inc., et al.,* 50 Fed. Reg. 34,774 (Aug. 27, 1985). Actual notice was not provided to plaintiffs concerning the right to request a hearing. No hearing was requested.

Homestake furnished information concerning the company's production and sales of uranium concentrate during the years 1983, 1984, and 1985. The record shows a 45.8% decrease in production and an 0.4% decrease in sales of uranium concentrate by pounds in 1984 as compared to 1983, and a 57% decrease in production and a 17.2% decrease in sales in the first half of 1985 as compared to the first half of 1984. R. 92. The record shows Homestake marketed the uranium concentrate to public utilities. *Id.*

Labor conducted a survey, sending questionnaires for the years 1983, 1984, and 1985 to Homestake's customers concerning their purchases of uranium concentrate from Homestake, other domestic suppliers, and foreign suppliers. Labor also sent questionnaires to those firms to which Homestake had submitted unsuccessful bids in 1984 and 1985.

The confidential record indicates the number of customers which responded. Conf. R. 48. Of those customers which responded, [a confidential number] stated that they were not customers of Homestake during the review period. *Id.* at 48, 59–62, 66–68. One customer answered that it purchased equal amounts of uranium concentrate from Homestake in each of the three years and did not purchase any imported uranium concentrate. *Id.* at 63–65. Another customer reported that its purchases from Homestake were the same in 1983 and 1984 and that it did not purchase imported uranium concentrate during all three years. *Id.* at 69–71. That customer stated that it has made no purchases since 1984 because of delays in bringing its nuclear plants into service. *Id.*

All but one of the firms to which Homestake submitted an unsuccessful bid stated that Homestake was not the lowest domestic bidder on the contract. *Id.* at 48–58. Many of the contracts awarded went to foreign firms. *Id.* The remaining firm's supply contract had not been awarded at the time of investigation. *Id.*

The Secretary denied plaintiffs' petition, finding that section 222(3) of the Act, 19 U.S.C. § 2272(3) (Supp. IV 1986), had not been met because "[a] survey of customers indicated that increased imports did not contribute importantly to worker separations at the firm." *Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance; LTV Steel Co.,* 51 Fed. Reg. 693, 694 (Jan 7, 1986). After granting a request by a Homestake company official for administrative reconsideration of the denial, the Secretary adhered to his earlier determination and again denied plaintiffs' petition for trade adjustment assistance. *See Adjustment Assistance, Homestake Mining Co., Grants, NM; Affirmative Determination Regarding Application for Reconsideration,* 51 Fed. Reg. 6,053 (Feb. 19, 1986); *Homestake Mining Co., Grants, NM, Negative Determination on Reconsideration,* 51 Fed. Reg. 10,694 (March 28, 1986).

Plaintiffs' challenge to the Secretary's determination presents three questions: (1) whether the survey is in accordance with law, (2) whether the results of the survey provide substantial evidence to support the determination that increased imports of uranium concentrate did not contribute importantly to the worker separations within the meaning of 19 U.S.C. § 2272(3) (Supp. IV 1986), and (3) whether the failure to provide plaintiffs proceeding without benefit of counsel actual notice of their right to request a hearing violates due process.

DISCUSSION

Pursuant to section 284 of the Trade Act of 1974, 19 U.S.C. § 2395(c) (1982), the Court must determine whether the Secretary's decision denying a petition for certification of eligibility for trade adjustment assistance benefits is supported by substantial evidence contained in the administrative record and is in accordance with law. *Woodrum* v. *Donovan*, 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), *aff'd*, 2 Fed. Cir. (T) 82, 737 F.2d 1575 (1984); *Former Employees of Zapata Offshore Co., Inc.* v. *United States*, 11 CIT 841, Slip Op. 87–124, at 3–4 (Nov. 9, 1987). Section 284(b) of the Act, 19 U.S.C. § 2395(b) (1982), provides that "[t]he findings of fact by the Secretary * * * if supported by substantial evidence, shall be conclusive" on the Court. There is also the "further requirement that the rulings made on the basis of those findings be in accordance with the statute and not be arbitrary or capricious, and for this purpose the law requires a showing of reasoned analysis." *Chapman* v. *Donovan*, 9 CIT 545, 547 (1985) (quoting *International Union, United Auto., Aerospace and Agricultural Implement Workers of Am.* v. *Marshall*, 584 F.2d 390, 396 n.26 (D.C. Cir. 1978)); *see* 19 U.S.C. § 2273(c) (1982).

IS THE SURVEY IN ACCORDANCE WITH LAW

Plaintiffs contend the survey is in error because Labor only requested information covering the period from 1983 to July 1985, arguing that information covering a longer period of time should have been obtained to account for the use of long-term supply contracts in the domestic uranium market. According to plaintiffs, a long-term supply contract lost to foreign competition prior to 1983 could cause the separation of workers from Homestake in 1984 and 1985.

In *Paden* v. *United States Dep't of Labor*, 562 F.2d 470 (7th Cir. 1977), the court confronted a similar argument concerning whether there were "increases of imports" within the meaning of 19 U.S.C. § 2272(3). The Court upheld the Secretary's practice of confining the scope of the investigation to a consideration of imports during the year of separation and the immediately preceding year. *Id.* at 473–74; *see also International Union, United Auto., Aerospace & Agricultural Implement Workers of Am. UAW, Local 834* v. *Donovan*, 8 CIT 13, 17–18, 592 F. Supp. 673, 677 (1984). The *Paden* Court noted: "Although petitioners' contention that imports in any given year may adversely affect employment several years later is not without validity and is indeed recognized as a distinct possibility by the Secretary, we are not convinced that the Secretary's practice should be condemned either generally or under the facts of this case." *Paden*, 562 F.2d at 473–74.

Similar to the reasoning in *Paden*, this Court finds that the Secretary is permitted to confine the investigation to the year of separation and the immediately preceding year in determining under 19

U.S.C. § 2272(3) (Supp. IV 1986) whether the imports found to be increasing "contributed importantly" to the worker separations and to any decline in sales or production. As stated by the Secretary in *Paden,* "confining consideration to imports during the year of separation and the immediately preceding year, the Secretary can focus on those imports which are most likely to affect employment in the year of separation while diminishing consideration of those factors which, while affecting employment, are not within coverage of the act." *Id.* at 473. The Court is not persuaded that a period longer than that investigated is required in this case.

Plaintiffs also assert the Secretary erred by using a "lowest domestic bidder test" to assess Homestake's failure to obtain future supply contracts bid upon in 1984 and 1985. The test is whether absent the foreign bid would the subject domestic firm be awarded the contract or would the contract be awarded to another domestic firm bidding a lower price. If the domestic bidder under investigation was not the domestic bidder with the lowest price, it is not considered to have lost the contract to imports.

Plaintiffs argue that focusing on price alone in determining whether Homestake lost contracts to increasing imports ignores other factors such as reputation, service record, convenience of location, etc., which may influence a prospective purchaser's decision.

The record discloses that "[b]ecause the quality of uranium nuclear fuel is fairly uniform, competition among producers is based mainly on other negotiable terms of contracts such as prices, timing and timeliness of delivery, supply availability and so forth", but that price is becoming "increasingly important, at the expense of the other terms * * *." R. 83. This Court gives substantial deference to the methods the Secretary employs in reaching a determination concerning the eligibility of workers for trade adjustment assistance and remands the Secretary's decision only where the techniques chosen are "so marred that the Secretary's finding is arbitrary or of such nature that is could not be based on 'substantial evidence.'" *United Glass and Ceramic Workers of North Am.* v. *Marshall,* 584 F.2d 398, 405 (D.C. Cir. 1978); *see, e.g., Retail Clerks Int'l Union, Local 149F—Footwear Div.* v. *Donovan,* 10 CIT 308, Slip Op. 86–46, at 10 (Apr. 29, 1986); *Stipe* v. *United States Dep't of Labor,* 9 CIT 543, 544 (1985); *Cherlin* v. *Donovan,* 7 CIT 158, 162, 585 F. Supp. 644, 647 (1984). Under the circumstances, the focus on the importance of price in evaluating Homestake's failure to obtain future supply contracts is not so marred as to render a finding based upon the use of such technique arbitrary.

Plaintiffs argue in passing that the test allows employees of the lowest domestic bidders to be treated differently than those employees of the other domestic bidders whose bids are essentially "comparable" but for the price, since employees of the lowest domestic bidders might eventually qualify for trade adjustment assistance bene-

fits. Plaintiffs say the test "constitutes a violation of the Constitutional guarantee of equal protection under the law in that it results in a dissimilar treatment of similarly situated workers without a rational or reasonable basis therefor." Plaintiffs' Brief in Support of the Motion for Judgment upon the Agency Record at 7.

The lowest domestic bidder test demonstrates that even without the competition from increasing imports Homestake would not have obtained certain contracts. The test thus distinguishes between workers who lose their jobs due to increasing imports and those who lose their jobs due to other factors. This distinction is consistent with a requirement of the statute. *See* 19 U.S.C. § 2272(3) (Supp. IV 1986). Distinctions between employees required by the statutory criteria of the trade adjustment assistant provisions are reasonable and rational. *See Woodrum,* 5 CIT at 198–201, 564 F. Supp. at 832–34.

Plaintiffs next claim that all of the contracts which were awarded went to foreign firms. Plaintiffs assert that this evidences the more general effect increased imports had on the United States uranium concentrate market, which they claim the lowest domestic bidder test ignores, and indicates that increased imports caused the worker separations at Homestake.

The record shows that [a confidential amount] of the supply contracts Homestake bid on were awarded to other domestic firms. *See* Conf. R. 53. The record contains evidence on the overall effect of increasing imports of uranium concentrate on the domestic market. *See* R. 3–25, 72–91. The survey, including the lowest domestic bidder test, helped the Secretary make the requisite determination pursuant to 19 U.S.C. § 2273(3) (Supp. IV 1986) as to whether the increasing imports contributed importantly to plaintiffs' separation from Homestake and to the declines in sales and production at Homestake. The Secretary may use customer surveys to determine whether there is a causal link between imports and worker separations. *Stipe,* 9 CIT at 544 (and cases cited therein). Although use of the lowest domestic bidder test may not be the most reliable measure of the overall effect of increasing imports, the test as used in this case is in accordance with law.

## Is There Substantial Evidence to Support the Determination

Many workers were separated in October, 1984. R. 2, 93. Sales declined slightly and production declined significantly in September, 1984. *Id.* at 92. The Secretary could find that these workers were separated because of the declines in sales and production, which resulted from Homestake's failure to obtain several supply contracts.

Plaintiffs contend that the supply contracts were awarded to foreign competitors and therefore increased imports contributed importantly to the worker separations in 1984. The record shows that Homestake was not the lowest domestic bidder on these contracts. Conf. R. 48–58. This evidence is sufficient to support the Secretary's

conclusion that Homestake would not have received these contracts, even without foreign competition, and that increased imports did not contribute importantly to plaintiffs' separation from Homestake.

Most of the other workers were separated in April and May of 1985. R. 2, 93. Sales declined significantly and production continued to decline in the first seven months of 1985 as compared to the same period in 1984. *Id.* at 92.

The record shows that most of the decline in sales in 1985 was due to one customer's failure to make any purchases of uranium concentrate from any source, foreign or domestic, because delays in bringing its nuclear plants on line reduced its need for uranium concentrate. Conf. R. 69–71.

Plaintiffs assert that the decision of one customer is an inade-quate sample for determining whether increasing imports contributed importantly to worker separations at Homestake. The Court disagrees. The court in *Retail Clerks Int'l Union,* 10 CIT at 312, Slip Op. 86–46 at 10–11, upheld the Secretary's reliance on the response of only one customer where that customer accounted for "nearly all" of the company's sales decline for the period under review. Similar to that case, the one customer's failure to purchase accounted for nearly all [a confidential number, R. 92, 94; Conf. R. 70] of Homestake's entire sales decline for the 1985 period.

Although the decline in Homestake's 1985 production may have been caused by declining sales and its failure to obtain future contracts, there is substantial evidence in the record, as discussed above, to support the determination that this decline was not due to imports.

Upon review of the entire record, the Court finds that the survey provided substantial evidence on which the Secretary could base a decision to deny certification for worker adjustment assistance benefits to plaintiffs.

### REQUIREMENT OF ACTUAL NOTICE TO REQUEST A HEARING

Plaintiffs claim due process requires the Secretary to provide them with actual notice of their right to a public hearing because they proceeded *pro se.* Plaintiffs further claim they were adversely prejudiced by the lack of such a hearing and request this Court to grant judgment in their favor or, alternatively, remand the case for a public hearing and consideration of further evidence.

Defendant contends that there is no requirement to provide actual notice to *pro se* litigants, and cities in support *Kelley* v. *Secretary, United States Dep't of Labor,* 812 F.2d 1378 (Fed. Cir. 1987). In *Kelley,* our appellate court acknowledged that leniency is to be extended to a *pro se* party but held that "where the question is the calculation of the time limitations placed on the consent of the United States to suit, a court may not similarly take a liberal view of that

jurisdictional requirement and set a different rule for *pro se* litigants only." *Id.* at 1380. *See also Former Employees of Geosearch, Inc.* v. *United States,* 11 CIT 953, Slip Op. 87–144 (Dec. 30, 1987). *Kelley* reached its determination on jurisdictional grounds and the Court finds it inapplicable to this action concerning notice of the right to request a public hearing.

In *Estate of Finkel* v. *Donovan,* 9 CIT 374, 378–79, 614 F. Supp. 1245, 1246–49 (1985), and *Miller* v. *Donovan,* 9 CIT 473, 476–79, 620 F. Supp. 712, 716–17 (1985), the court held that the Secretary should provide *pro se* petitioners with actual notice of the 10-day period in which to request a hearing, but did not find the Secretary's failure to do so in either case required remand because plaintiffs were not prejudiced by the lack of a public hearing.

In this case, the Secretary's determination will be set aside if the failure to provide actual notice of the right to request a hearing prejudiced plaintiffs. Plaintiffs claim they were prejudiced because they were precluded from presenting additional information on the status of the domestic uranium industry and Homestake in the form of charts, text and testimony.

A review of the record reveals that a significant amount of evidence was submitted on the status of the domestic uranium industry. R. 3–25, 72–91. Extensive data on Homestake was also collected. R. 1–2, 26, 35, 46–47, 92–94; Conf. R. 32–34, 36–37, 40–45, 48–71, 95–108. The value of additional testimony is doubtful in light of this information and the many letters received by the Secretary in response to the original determination prior to reconsideration. R. 127–38. Plaintiffs have failed to demonstrate any new information which they would submit at a public hearing that would be helpful to their case. The Court finds plaintiffs were not prejudiced by the lack of a public hearing and accordingly denies the request for a remand or judgment in plaintiffs' favor on due process grounds.

CONCLUSION

The Secretary's denial of certification for trade adjustment assistance benefits under the Act is affirmed. The action is dismissed. Judgment will be entered accordingly.