Slip Op. 08-123

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **BAO ZHU CHEN, MEI YUN ZHENG, and CONNIE CHEN, FORMER EMPLOYEES OF ADVANCED ELECTRONICS, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ELAINE L. CHAO, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,**<br><br>Defendant. | Before: Timothy C. Stanceu, Judge<br><br>Court No. 06-00337 |

### OPINION AND ORDER

[Remanding to United States Department of Labor its determination denying eligibility for benefits under the Trade Adjustment Assistance and Alternative Trade Adjustment Assistance programs.]

Dated: November 18, 2008

*Greater Boston Legal Services* (*Cynthia Mark* and *Monica Halas*) for plaintiffs.

*Gregory G. Katsas*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Meredyth Cohen Havasy*); *R. Peter Nessen*, Office of the Solicitor, United States Department of Labor, of counsel, for defendant.

Stanceu, Judge: Plaintiffs, three former employees of Advanced Electronics, Inc., contest a determination by the United States Department of Labor ("Labor" or the "Department") denying them eligibility for benefits under the Trade Adjustment Assistance ("TAA") and Alternative Trade Adjustment Assistance ("ATAA") programs administered under Title II of the Trade Act of 1974, as amended (the "Act"). 19 U.S.C. §§ 2271-2321, 2395 (Supp. V 2005).

The Department concluded that the employees did not meet statutory eligibility requirements, based on its finding that plaintiffs' separations from employment at Advanced Electronics, Inc. ("Advanced Electronics," "AEI," or the "Company"), which previously manufactured printed circuit boards in Boston, Massachusetts, were attributable neither to increases in imports of like products nor to a shift in production to a foreign country. Before the court is the Department's second notice announcing a negative determination of eligibility for TAA and ATAA benefits, which Labor issued in response to the court's order effecting a voluntary remand sought by the Department. Also before the court is plaintiffs' motion for judgment on the agency record, in which plaintiffs seek an order compelling Labor to issue an affirmative determination of eligibility. For the reasons stated below, the court concludes that the Department's investigation was inadequate to allow the Department to make findings of fact that were essential to a negative determination. Specifically, the investigation did not determine whether, and to what extent, an increase in imports into the United States of articles like or directly competitive with the Company's printed circuit boards caused the Company to lose business from a significant foreign customer. The court again remands this matter to the Department, which must reopen its investigation and issue a new determination grounded in appropriate findings of fact that are supported by substantial evidence.

## I. BACKGROUND

The Act authorizes various forms of adjustment assistance to workers who have lost their jobs as a result of increased imports or shifts of production out of the United States. 19 U.S.C. §§ 2291-98, 2318. These benefits, provided under federal and related state programs, include

training, re-employment services, and various allowances, such as income support, job search, and relocation allowances. *Id.*

The Complaint indicates that plaintiffs lost their jobs at Advanced Electronics when the Company ceased its Boston manufacturing operations on September 30, 2005. Compl. ¶¶ 7-8, 10, Attach. 2 at 1 (*Petition for Trade Adjustment Assistance (TAA) and Alternative Trade Adjustment Assistance (ATAA)* ("*Petition*")). Prior to their separations, plaintiffs had assembled and tested "subassembly" printed circuit boards and provided product support to the Company's customers. *Id.* ¶ 9. On June 6, 2006, plaintiffs sought the Department's certification of eligibility to apply for TAA and ATAA benefits. *Id.* ¶ 11, Attach. 2 (*Petition*). In July of that year, the Department issued its first notice announcing a negative determination ("First Notice"), concluding that the statutory requirements for eligibility had not been satisfied because the separations were the result of neither increases in imports of like products nor a shift in production to a foreign country. *Negative Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance And Alternative Trade Adjustment Assistance* (July 18, 2006) (Admin. R. at 60-62) ("*First Notice*").

Plaintiffs brought this action on October 2, 2006, alleging that the negative determination was unsupported by substantial evidence or was otherwise not in accordance with law. Compl. ¶ 18. Plaintiffs moved on June 29, 2007 to supplement the administrative record in this case with additional evidence and for a remand of the case to the Department for further investigation. Pls.' Mot. to Supplement the Admin. R. and to Remand this Case to the Department of Labor for the Consideration of All Relevant Factors ("Pls.' Remand Mot.") 1-2. Defendant responded with a motion for a voluntary remand, to which plaintiffs consented. Def.'s Consent Mot. for

Voluntary Remand.[1] The court granted defendant's consent motion, ordering the Department to "reopen its administrative record and investigation, reconsider its negative determination, and issue a redetermination as to whether plaintiffs are eligible for worker adjustment assistance benefits and alternative trade adjustment assistance." Order (Oct. 23, 2007).

Rather than setting forth a new decision upon remand, the Department's second notice affirmed the First Notice but also announced two new findings of fact. Notice of Negative Determination On Remand (Dec. 19, 2007) (Supplemental Admin. R. at 8-10) ("Second Notice"). Plaintiffs responded to the Second Notice by moving for judgment on the agency record pursuant to USCIT Rule 56.1. Pls.' Mot. for J. on the Admin. R. ("Pls.' Mot. for J."); Pls.' Resp. to Def.'s Notice of Negative Determination on Remand in Supp. of Mot. for J. on the Admin. R. ("Pls.' Remand Resp."). Arguing that another remand would be futile, plaintiffs seek a court order directing Labor to certify all workers of Advanced Electronics who were laid off in September 2005. Pls.' Mot. for J. 1; Pls.' Remand Resp. 1. Defendant opposes plaintiffs' motion, maintaining that Labor's Second Notice is supported by substantial evidence and is otherwise in accordance with law. Def.'s Mem. in Opp'n to Pls.' Mot. for J. on the Admin. R. 1 ("Def.'s Mem. in Opp'n"). Defendant requests that the court affirm Labor's determination and dismiss this action. *Id*.

---

[1] Plaintiffs requested oral argument on their remand motion. Pls.' Mot. to Supplement the Admin. R. and to Remand this Case to the Department of Labor for the Consideration of All Relevant Factors 2. Oral argument was not held because plaintiffs consented to defendant's motion for voluntary remand and plaintiffs have not sought oral argument following the Department's issuance of its decision upon remand. *See* Def.'s Consent Mot. for Voluntary Remand 3.

## II. DISCUSSION

The court exercises jurisdiction under 28 U.S.C. § 1581(d)(1), which grants the Court of

International Trade exclusive jurisdiction over any civil action commenced to review final

determinations by Labor on the eligibility of workers for adjustment assistance under the Act.

*See* 28 U.S.C. § 1581(d)(1) (2000).  Upon review, Labor's findings of fact are deemed

conclusive if they are supported by substantial evidence.  19 U.S.C. § 2395(b).  Labor's

decisions on certification for TAA benefits are affirmed upon judicial review if they are

supported by substantial evidence contained in the administrative record and are otherwise in

accordance with law.  *Woodrum v. Donovan*, 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983),

*aff'd sub nom. Woodrum v. United States*, 737 F.2d 1575, 1576 (Fed. Cir. 1984).  "Substantial

evidence has been held to be more than a 'mere scintilla,' but sufficient enough to reasonably

support a conclusion."  *Former Employees of Swiss Indus. Abrasives v. United States*,

17 CIT 945, 947, 830 F. Supp. 637, 639-40 (1993) (citing *Ceramica Regiomontana, S.A. v.

United States*, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), *aff'd*, 810 F.2d 1137, 1139

(Fed. Cir. 1987)).

Pursuant to 19 U.S.C. § 2272(a), if a significant number or proportion of the workers in a

firm have become separated from employment, the workers may obtain eligibility for TAA

benefits in either or two ways.  19 U.S.C. § 2272(a).  First, under § 2272(a)(2)(A), such workers

qualify if all of the following criteria are met: (1) sales or production of the employing firm have

decreased absolutely; (2) imports of articles like or directly competitive with articles produced

by the employing firm have increased; and (3) the increase in imports "contributed importantly"

to the employees' separation and to the decline in the sales or production of the employing firm.

*Id*. § 2272(a)(2)(A).  Second, under § 2272(a)(2)(B), the workers qualify if the employing firm shifts production of like or directly competitive articles to a foreign country and if any of certain criteria are met.[2]  *Id*. § 2272(a)(2)(B).  Plaintiffs do not argue that a shift in production to a foreign country occurred and instead base their claim on § 2272(a)(2)(A).  They submit that the Company's ceasing production satisfies criterion (1) and that United States import statistics (included in their motion to supplement the administrative record) showing an increase in printed circuit board imports during the three years prior to 2005, when the plant in Boston closed, satisfy criterion (2).  Pls.' Remand Resp. 4; Pls.' Mot. for J. 1-2.  Plaintiffs disagree with Labor's conclusion that criterion (3) has not been satisfied and argue that the Department's investigation was inadequate.  Pls.' Remand Resp. 2-4; Pls.' Mot. for J. 1-2.  According to plaintiffs, Labor should have found that an increase in imports of printed circuit boards contributed importantly to the termination of the manufacturing operations of Advanced Electronics in Boston and, thus, to their separation.  Pl.'s Mot. for J. 1-2.

It is undisputed that a significant number of the workers of Advanced Electronics were separated from their employment and that sales and production of printed circuit boards at Advanced Electronics decreased absolutely during what the Department termed the "period under investigation."[3]  *Id*.; Def.'s Mem. in Opp'n 8; *Findings of the Investigation* (Confidential

---

[2] The criteria are: (1) the shift in production was to a country with which the United States has entered into a free trade agreement; (2) the shift in production was to a country that benefits from one of several trade preference programs; or (3) there has been or is likely to be an increase in imports of articles like or directly competitive with articles produced by the employing firm.  19 U.S.C. § 2272(a)(2)(B)(ii) (Supp. V 2005).

[3] The Department referred to "2004, 2005, January through May 2006" as the "period under investigation."  *Negative Determinations Regarding Eligibility To Apply for Worker*

(continued...)

Admin. R. at 63). With respect to criterion (2), Labor did not make a finding on whether there was an increase of imports of articles like or directly competitive with the Company's printed circuit boards. Because criterion (3) also must be satisfied for eligibility, a finding on criterion (2) would not be necessary if Labor's analysis concerning criterion (3) were adequate. However, that analysis is deficient.

The shortcoming in the Department's investigation is the basis on which it concluded that criterion (3) of the statute was not satisfied. With respect to criterion (3), the Department's ultimate finding was that an increase in imports of products like or directly competitive with the Company's printed circuit boards during the period under investigation did not contribute importantly to the employees' separation and to the decline in the sales or production of the employing firm. *See* Second Notice (Supplemental Admin. R. at 10); *First Notice* (Admin. R. at 61). That ultimate finding was dependent on several other factual findings, which were stated in the First and Second Notices. All but one of these subordinate findings are supported by substantial record evidence. Standing alone, the findings that are supported by substantial evidence are not sufficient to support the ultimate finding.

In the First Notice, Labor deemed plaintiffs ineligible for certification under § 2272(a)(2)(A) based on several factual findings, all of which pertained to criterion (3). *First Notice* (Admin. R. at 60-62). It found that Advanced Electronics did not import products like or directly competitive with those produced at the subject plant during the period under investigation. *Id.* (Admin. R. at 61). It surveyed major domestic customers of Advanced

---

[3](...continued)
*Adjustment Assistance And Alternative Trade Adjustment Assistance* (July 18, 2006) (Admin. R. at 60-62).

Electronics that had reduced their purchases of the Company's printed circuit boards and found that they did not import printed circuit boards during that period. *Id.*; *Findings of the Investigation* (Confidential Admin. R. at 64); *Confidential Data Request, Advanced Electronics, Inc.* (Confidential Admin. R. at 36-37). From these findings, the Department concluded in the First Notice that criterion (3) had not been satisfied. *First Notice* (Admin. R. at 61). Labor further found, however, that some of the decline in the sales of Advanced Electronics was due to a decrease in purchases from a single foreign customer during the relevant period. *Id.*

In challenging the First Notice, plaintiffs based their principal argument on the foreign customer, arguing that Labor did not contact that customer and thus failed to investigate a potentially significant cause of the Company's decline in sales. Pls.' Remand Mot. 2, 4-5. Highlighting the importance of the foreign customer, they stated in their motion for remand that the domestic customers that the Department surveyed represented less than half of the decline in the Company's sales during the 2002-2005 period. *Id.*

The Department's Second Notice "affirm[s] the original notice of negative determination of eligibility to apply for worker adjustment assistance." Second Notice (Supplemental Admin. R. at 10). While affirming the First Notice, Labor used the Second Notice to announce two new findings of fact. *Id.* Based on interviews conducted with former Company officials, Labor found that Advanced Electronics did not send printed circuit boards to a domestic facility of the foreign customer during the period under investigation and instead sent these products to a facility of the foreign customer outside of the United States. *Id.* (Supplemental Admin. R. at 9-10). Relying upon this finding, Labor further found in the Second Notice that "the foreign

customer did not import articles like or directly competitive with the printed circuit boards produced by the subject firm." *Id.* (Supplemental Admin. R. at 10).

Plaintiffs take issue with the Department's finding that the foreign customer did not import like or directly competitive articles, which they view as unsubstantiated. Pls.' Remand Resp. 2. In their comments on the Second Notice, they again characterize the Department's investigation as inadequate, stating as follows:

> The Department failed to contact the foreign customer to determine whether it did or did not import like or directly competitive articles, and the Department failed to determine whether the foreign customer's new supplier, another American contractor, resulted in increased imports which is entirely plausible, given that this American contractor's employees have been certified for Trade Adjustment Assistance ("TAA") benefits on five occasions between 2002 and 2007.

*Id.* at 2-3 (footnote omitted). They also argue that the Department again ignored the evidence of increased imports of circuit boards, which evidence they claim shows a 59% increase in United States imports of printed circuit board assemblies between 2002 and 2005. *Id.* at 3. "The Department does not address overall imports or domestic market conditions in either of its negative determinations." *Id.*

Substantial evidence supports a finding that increasing imports of like or directly competitive articles did not contribute importantly to the reduction in the Company's sales to domestic customers. Labor surveyed some of the customers Advanced Electronics had identified in a confidential data request as customers to whom sales of printed circuit board had declined between 2003 and 2005. *Confidential Data Request, Advanced Electronics, Inc.* (Confidential Admin. R. at 36-37); *Customer Survey Responses* (Confidential Admin. R. at 48-49, 51-53); *Memo. from LeRoynda Brooks, U.S. Dep't of Labor to File* (July 12, 2006) (Confidential Admin. R. at 56). The responses indicate that none of the surveyed customers switched its supply from

printed circuit boards produced by Advanced Electronics to competitive imports. *See Customer Survey Responses* (Confidential Admin. R. at 48-49, 51-53); *Memo. from LeRoynda Brooks, U.S. Dep't of Labor to File* (July 12, 2006) (Confidential Admin. R. at 56). Specifically, the responses indicate that the surveyed customers did not purchase printed circuit boards from foreign firms and that they did not purchase from domestic suppliers printed circuit boards wholly manufactured in a foreign country. *Customer Survey Responses* (Confidential Admin. R. at 48-49, 51-53); *Memo. from LeRoynda Brooks, U.S. Dep't of Labor to File* (July 12, 2006) (Confidential Admin. R. at 56). Substantial record evidence indicates that the only domestic customers who had reduced their purchases that Labor did not survey accounted for a very small portion of the Company's sales and sales decline during the period under investigation. *See Confidential Data Request, Advanced Electronics, Inc.* (Confidential Admin. R. at 36-37, 40).

A determination concerning eligibility for benefits must be based upon an investigation conducted with the utmost regard for the interests of petitioning workers. *See Abbott v. Donovan*, 7 CIT 323, 327-28, 588 F. Supp. 1438, 1442 (1984) (quoting *Local 167, Int'l Molders & Allied Workers' Union v. Marshall*, 643 F.2d 26, 31 (1st Cir. 1981)). In this instance, however, the Department's investigation left unanswered the question of the cause of the decline in the Company's sales to the foreign customer during the period of investigation. The cause of the sales decline is important because, according to the record evidence, the foreign customer accounted for a significant percentage of all of the Company's total sales in the Company's 2004 fiscal year and its total sales in the first eight months of its 2005 fiscal year. *See Confidential Data Request, Advanced Electronics, Inc.* (Confidential Admin. R. at 36-37, 40). Only one of the domestic customers listed in the Company's response to Labor's data request accounted for a

greater proportion of the Company's sales during the period under investigation than did the

foreign customer. *See id.* Additionally, the foreign customer accounted for a higher percentage

of the total sales *decline* between the first eight months of the Company's 2004 fiscal year and

the first eight months of the 2005 fiscal year than did any other customer for that time period.

*See id.*

The Department stated a finding in the Second Notice that the foreign customer "did not

import articles like or directly competitive with the printed circuit boards produced by the

subject firm." Second Notice (Supplemental Admin. R. at 10). Substantial evidence does not

exist on the record to support this finding. The relevant evidence, placed on the record during

the reopened investigation, consists of an exchange of e-mail and telephone communications

between a Labor official and former representatives of Advanced Electronics. In these

communications, Labor's inquiries were limited principally to whether Advanced Electronics, in

supplying the foreign customer, had shipped printed circuit boards abroad or to a domestic

facility. *See Memo. from Del-Min Chen, U.S. Dep't of Labor, to File* (Nov. 7, 2007)

(Supplemental Confidential Admin. R. at 3); *E-mail from T.O. Yeung, Adcotron EMS, Inc., to*

*Del-Min Chen, U.S. Dep't of Labor* (Nov. 27, 2007) (Supplemental Confidential Admin. R.

at 5-6); *E-mail from John Boyle, Adcotron EMS, Inc., to Del-Min Chen, U.S. Dep't of Labor*

(Dec. 6, 2007) (Supplemental Confidential Admin. R. at 7). The result of these inquiries was

Labor's finding that the Company "did not send printed circuit boards to a domestic facility of

the foreign customer." Second Notice (Supplemental Admin. R. at 10). That finding is

supported by substantial record evidence, but the finding itself does not rule out the possibility

that like or directly competitive articles were imported into the United States by the foreign

customer, an affiliate of the foreign customer, or another supplier and contributed so

significantly to the Company's loss of sales to the foreign customer during the period under

investigation as to have been an important cause of the Company's ceasing its manufacturing

activity in Boston.  In this regard, the statute does not require increased imports to be the *most*

important cause of worker separation for criterion (3) to be satisfied.  Rather, the term

"contributed importantly" means "a cause which is important *but not necessarily more important*

*than any other cause*."  19 U.S.C. § 2272(c)(1) (emphasis added).

As plaintiffs have suggested, an investigation that included inquiries to the foreign

customer could have revealed that the foreign customer stopped purchasing printed circuit

boards from Advanced Electronics and began purchasing products from another American

supplier (or suppliers).  *See* Pls.' Remand Resp. 2-3.  A new supplier possibly could have begun

supplying the foreign customer by importing circuit boards like the Company's circuit boards.

For example, a new supplier could have conducted minor packaging, processing, or testing

operations at a domestic facility, in preparation for exportation of foreign-origin circuit boards to

the foreign customer.[4]  Although this possibility is hypothetical and speculative, Labor's failure

to inquire further into the Company's loss of business with the foreign customer undermined

Labor's finding that increased imports of a like or directly competitive product did not contribute

---

[4] The Department's customer survey questionnaires (sent in this investigation only to the Company's domestic customers) contemplate that a customer could switch its supply of a product from a domestic producer to a domestic supplier of a product produced outside the United States.  *See Customer Survey Responses* (Confidential Admin. R. at 47-49, 51-53) (asking customers to whom sales of Advanced Electronics had declined if "any of the product(s) purchased from other domestic firms [were] wholly manufactured in a foreign country," and asking the respondent to provide details as to what portion of their purchases fit such a description).  A similar scenario could involve importation of a like or directly competitive product prior to exportation of that product to a foreign customer.

importantly to plaintiffs' separation. That finding cannot be said to be supported by substantial evidence on the record.

Defendant argues that Labor was not obligated to investigate "imports of the foreign customer's new domestic supplier" because the statute, according to defendant, does not require Labor to investigate "an indirect effect of imports." Def.'s Mem. in Opp'n 10-11. According to defendant, "such imports, if they existed, would be insufficient to show the required connection between imports and AEI's workers' separation." *Id.* at 6. In making this argument, defendant appears to rely on, but does not explicate, its interpretation of the term "contributed importantly" as used in 19 U.S.C. § 2272(a)(2)(A)(iii). *Id.* at 10-11. What is more, no discussion of the statutory construction issue alluded to by defendant appears in the First or Second Notice.

The court must review an agency's determination based on the reasons the agency set forth in that determination, not upon *post hoc* rationalizations of agency actions. *See NEC Home Electronics, Ltd. v. United States*, 54 F.3d 736, 743 (Fed. Cir. 1995) (stating that the court is "powerless to affirm an administrative action on a ground not relied upon by the agency" (citation omitted)); *see also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962) (holding that "courts may not accept . . . *post hoc* rationalizations for agency action"). The court will not affirm Labor's negative determination based on reasoning that was advanced for the first time by counsel in briefs submitted to the court.

In addition, the argument concerning the proper causation standard under the Act, as presented by defendant, is unpersuasive. Defendant relies on *Estate of Finkel v. Donovan*, 9 CIT 374, 382, 614 F. Supp. 1245, 1251 (1985) (citing *Abbott v. Donovan*, 8 CIT 237, 240, 596 F. Supp. 472, 475 (1984)), for the principle that the term "contributed importantly" as used

in the Act suggests a direct and substantial relationship between increased imports and a decline in sales or production. Def.'s Mem. in Opp'n 10-11. Defendant argues that any effect of imports of the foreign customer's new domestic supplier would have been an indirect effect that Labor was not required to investigate. *Id*. at 6, 10-11. However, the facts of *Estate of Finkel*, and the causation issue considered by the Court of International Trade in that case, are not analogous to the facts and causation issue presented here.

*Estate of Finkel* considered the question of whether Labor correctly applied the "contributed importantly" causation standard in the Act in finding that imports of men's and boys' slacks did not contribute importantly to plaintiffs' separation from employment from a domestic producer of these products. *See Estate of Finkel*, 9 CIT at 382-83, 614 F. Supp. at 1251-52. Labor had based a negative determination of eligibility in *Estate of Finkel* on its findings that most of the customers of the domestic producer that employed the plaintiffs prior to separation did not import men's or boys' slacks in 1979 and 1980, and that those customers who did import these products represented a relatively small percentage of the producer's sales during those years. *Id*. at 376-77, 614 F. Supp. at 1247. Plaintiffs argued that Labor should have taken into account (1) those customers who decreased purchases from the domestic producer and switched to imports, or to other domestic sources who had lowered their prices to compete with imports, and (2) the domestic producer's inability to attract new customers due to increasing import penetration. *Id.* at 382, 614 F. Supp. at 1251. The Court in *Estate of Finkel* upheld the findings on which Labor had based its negative determination. *See id.* at 376-77, 382-83, 614 F. Supp. at 1247, 1251-52. Citing legislative history instructing that a cause must be significantly more than *de minimis* to have contributed importantly, the Court held that these

findings were sufficient to rule out the possibility that imports of men's and boy's slacks were an important contributing cause of the domestic producer's loss of business and the eventual separation of the employees. *Id.* at 383, 614 F. Supp. at 1252 (quoting S. Rep. No. 93-1298, at 133 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 7186, 7275).

*Estate of Finkel* does not support defendant's argument that "Labor was not obligated to investigate the American supplier's imports because such imports, if they existed, would be insufficient to show the required connection between imports and AEI's workers' separation." *See* Def.'s Mem. in Opp'n 6. Labor's valid findings in this case (*i.e.*, those supported by substantial evidence), taken together, are not sufficient to rule out imports as an important causative factor. In *Estate of Finkel*, the Court of International Trade was not persuaded by plaintiffs' argument that Labor should have considered (1) those customers who decreased purchases from the domestic producer and switched to imports, or to other domestic sources who had lowered their prices to compete with imports, and (2) the domestic producer's inability to attract new customers due to increasing import penetration. *Estate of Finkel*, 9 CIT at 382-83, 614 F. Supp. at 1251-52. Plaintiff's argument in *Estate of Finkel* concerning customers who switched to imports was refuted by Labor's finding that such switching was relatively insignificant. *See id.* at 383, 614 F. Supp. at 1252. The effect of domestic sources who lowered their prices to compete with imports and the effect of import penetration on the producer's inability to attract new customers, both of which were characterized as indirect effects in the opinion in *Estate of Finkel*, are not analogous to what plaintiffs are alleging in this case. *See id.* at 382-83, 614 F. Supp. at 1251-52. Plaintiffs are alleging, in essence, that imports into the United States, after re-exportation, could have displaced the printed circuit boards the Company

previously supplied to the foreign customer and that Labor's investigation was inadequate because it did not consider this possibility. Pls.' Remand Resp. 2-3. The court declines to adopt a construction of the Act under which Labor need never consider, in any circumstances, whether increased imports of a like or directly competitive article contributed importantly to a plaintiff's separation by causing the employer to lose business from a customer outside of the United States. Moreover, the Department has not indicated that it based its own decision on such a construction. Any construction of the Act must consider the remedial purpose of this statute and interpret its provisions so as to effectuate the statutory purpose. *Woodrum*, 5 CIT at 198, 564 F. Supp. at 832 ("It is true . . . that the remedial nature of the [TAA] statute requires a liberal construction." (citing *United Shoe Workers of Am. v. Bedell*, 506 F.2d 174, 187 (D.C. Cir. 1974)), *aff'd sub nom. Woodrum v. United States*, 737 F.2d at 1576; *see also Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) (stating that the Supreme Court is "guided by the familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes").

The court, for good cause shown, may remand an investigation to the Secretary of Labor to take further evidence. 19 U.S.C. § 2395(b). Because Labor's decision to deny plaintiffs' petition for certification was based on an investigation that was not adequate to allow Labor to make findings of fact necessary to support its denial of eligibility, the court sets aside the negative determination affirmed in the Second Notice and concludes that plaintiffs have shown good cause for another remand to the Department. The court, therefore, orders a remand during which the Department must reopen its investigation and must attempt to determine whether, and to what extent, an increase in imports into the United States of articles like or directly

competitive with the Company's printed circuit boards caused the Company to lose business from its foreign customer.[5]

Plaintiffs move for a judgment on the agency record, ordering the Secretary of Labor to certify as eligible under the TAA and ATAA all workers of the Company who were laid off in September 2005. Pls.'s Mot. for J. 1. The court declines to do so and instead, pursuant to 19 U.S.C. § 2395(c), will set aside the Department's determination of ineligibility as set forth in the First and Second Notices. For the reasons stated in this Opinion and Order, a remand for further investigation is the appropriate disposition of the Second Notice that is now before the court and the appropriate disposition of plaintiffs' motion for judgment on the agency record.

### III. CONCLUSION AND ORDER

The court concludes that the Department's investigation was inadequate to allow the Department to make findings of fact that were essential to a negative determination because Labor failed to attempt to determine the cause of the Company's loss of sales to its foreign customer. As a result, Labor's investigation was inadequate to determine, as required by 19 U.S.C. § 2272(a)(1) and (a)(2)(A), whether increased imports of articles like or directly competitive with the Company's printed circuit boards occurred and contributed importantly to the decline in the Company's sales or production and to plaintiffs' separation from employment.

Based on the court's review of the First and Second Notices, the administrative record, and all submissions made herein, it is hereby

---

[5] Because the court is remanding this matter to the Department to investigate further the cause of the loss of business with the foreign customer, it is not necessary to consider plaintiffs' argument that the Department's investigation was inadequate because it did not consider the effects of overall domestic market conditions. Pls.' Mot. for J. on the Admin. R. 2; Pls.' Resp. to Def.'s Notice of Negative Determination on Remand in Supp. of Mot. for J. on the Admin. R. 3.

**ORDERED** that the Department's negative determination of eligibility be, and hereby is, set aside, and this matter is remanded to the Department for further proceedings consistent with this Opinion and Order; it is further

**ORDERED** that the Department shall issue a new determination on the issue of plaintiffs' eligibility for TAA and ATAA benefits that complies with this Opinion and Order, that is supported by substantial evidence, and that is in accordance with law; it is further

**ORDERED** that the Department shall reopen its investigation and the administrative record in this proceeding and shall attempt in the reopened investigation to determine whether, and to what extent, an increase in imports into the United States of articles like or directly competitive with the Company's printed circuit boards caused the Company to lose business from its foreign customer; and it is further

**ORDERED** that the Department shall have 60 days from the date of this Opinion and Order to file its new determination upon remand in this proceeding and that plaintiffs shall have 30 days from the filing of the new determination to file comments thereon with the court.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated:  November 18, 2008
         New York, New York